[Crim. No. 24099. Second Dist., Div. Five. Oct. 28, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
LUMMIE LONG, Defendant and Respondent.

## COUNSEL

Joseph P. Busch, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Robert Levy and Ronald B. Davey, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**KAUS, P. J.**—This is an appeal by the People (Pen. Code, § 1238, subd. (a)(8)) from an order dismissing an information which charged defendant with possession of heroin for sale (former Health & Saf. Code, § 11500.5).[1] The order was entered after the People refused to disclose the identity of a confidential informant or to reduce the charge to simple possession of heroin. (Health & Saf. Code, § 11350.)

The facts adduced in support of the motion to compel disclosure of the informant were as follows:[2] Officer Ingels of the Los Angeles Police Department received information February 3, 1973, from a confidential informant that heroin was being sold from a residence at 1030 West 38th Street by a person described only as a male Negro. The informant did not know the seller's name. The informant was an addict who had personally purchased heroin at the location within the previous three days. The informant had supplied information to the officer for over two years and was paid for his tips. Based on information previously received from the informant, the officer had made over 12 arrests which resulted in at least five felony and several misdemeanor convictions.

---

[1] Currently section 11351. Statutes 1972, chapter 1407, section 3, page 2987.

[2] It was stipulated that the evidence presented in connection with a motion under section 1538.5 of the Penal Code should be considered in connection with the motion to disclose the informant's identity.

Ingels did nothing with respect to the information he received regarding the residence at 1030 West 38th Street until February 16, 1973, when he undertook surveillance of the location for a period of 45 minutes. During this time he observed six people enter the location, remain about three minutes and leave. Ingels did not recognize any of the six people. Ingels believed that heroin sales were taking place because of the information he had received and his expertise in the area of narcotic trafficking.

Ingels thought that he checked the utilities at the location as part of his investigation. He could not recall to whom they were registered, but it was someone other than defendant. On February 20, 1973, Ingels returned to the location with three other officers to "make a narcotic investigation and make an arrest," based on the information he had received on February 3 and the activity he had observed on February 16.[3] Upon knocking on the door, identifying himself and announcing his purpose, Ingels heard running footsteps inside the house. Fearing evidence was about to be destroyed, he forced entry to the premises. He observed defendant coming out of the bathroom. Ingels saw a balloon on the bathroom floor beside the toilet. He retrieved it and five more balloons which were inside the flushing toilet.

The informant had not indicated how many people resided at the location. There were three other men in the residence besides defendant when the officer entered. Defendant was the only one in the bathroom, however. Ingels concluded from observing defendant's appearance that he was under the influence of heroin. A hypodermic needle was found in defendant's pocket. A hypodermic needle and $250 were found on a person named Gilbreath, one of the other three people present. The remaining two occupants were described only as male Negroes.[4] They were not arrested.

In support of the motion to disclose the informant's identity, defense counsel asserted that defendant neither resided at nor dealt in narcotics from the residence. He contended that the informant could corroborate those facts and that the informant's testimony that he dealt with someone else present at the time of Long's arrest would lessen the weight of the evidence against him.

On this appeal the People contend that the informant is not a material

[3]Ingels took no action with respect to the information between February 3 and February 16 because he had days off and special work assignments which precluded his doing so. He did not make an arrest February 16 because he was by himself and unable to get assistance from within his unit at the police department. Between February 16 and February 20 Ingels again had days off.

[4]Gilbreath's race was not described at the hearing.

witness of the type whose identity must be disclosed and that the trial court therefore erred in dismissing the information. ■ In order to establish that an informant's identity is essential to his right to a fair trial, a defendant need only demonstrate a reasonable possibility that the informant could give evidence on the issue of guilt which *might* result in his exoneration. *(People* v. *Borunda,* 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1]; *Honore* v. *Superior Court,* 70 Cal.2d 162, 168 [74 Cal.Rptr. 233, 449 P.2d 169]; *People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366].) To this end he must be able to articulate a theory of defense as to which the informant's evidence would be relevant *(People* v. *Sewell,* 3 Cal.App.3d 1035, 1039 [83 Cal.Rptr. 895]), but in "weighing the defendant's need, the court was not to pass upon the veracity of his claim, but only to ascertain if a reasonable possibility existed that the requested information might exonerate him." *(People* v. *Superior Court [Biggs]* 19 Cal. App.3d 522, 532-533 [97 Cal.Rptr. 118], citing *Price* v. *Superior Court,* 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721].)

■ Defendant's theory of defense is that he neither lived at the residence in question, nor sold narcotics there; that he had gone there for a fix and had handled the contraband which the People sought to use in evidence against him only momentarily for the purpose of destroying it, and that he therefore not only was not guilty of possession for sale, but that he was not guilty of simple possession either. *(People* v. *Mijares,* 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115].)[5]

The facts that the officers had no prior knowledge that defendant was in any way connected to the location, that there were others present at the location, and that defendant was under the influence of heroin all lend plausibility to the theory that the informant's testimony might assist defendant with respect to the charged offense of possession for sale. For example, there were at least two other persons in the residence at the time of defendant's arrest who fit the very limited description of the seller which the informant had supplied to the officer. A substantial sum of money was found on the fourth occupant. To prove that defendant possessed the heroin in violation of former section 11500.5 of the Health and Safety Code, the People had to show that he possessed the heroin with the specific intent to sell. *(People* v. *Newman,* 5 Cal.3d 48, 54 [95 Cal.Rptr. 12, 484 P.2d 1356].)* Unquestionably, possession of a commercial quantity furnishes circumstantial evidence of such intent. *(People* v. *Shipstead,* 19 Cal.App.3d

---

[5]Defendant did not articulate his reliance on *People* v. *Mijares,* below, although he did contend that disclosure of the informant's identity was relevant on the issue of simple possession as well as on possession for sale.

58, 77 [96 Cal.Rptr. 513].) However strong the inference may be in the run-of-the-mill situation where the defendant is found in calm, unperturbed possession of a commercial quantity, this is not such a case.[6] When the four officers suddenly raided the premises, defendant might have participated in a common effort to destroy all evidence of illegal activity, even if he was present only as a mere buyer. Thus, relatively slight evidence that someone other than defendant was doing business on the premises could suffice to raise a reasonable doubt of defendant's guilt of possession for sale, as distinguished from simple possession. The trial court obviously felt that on the narrow issue of whether defendant was a seller or merely a customer who was shopping at a bad time, the informant's evidence that the seller whom he had previously encountered on the premises was not defendant but one of the others present, was relevant because it had a "tendency in reason" to prove or disprove a disputed fact. (Evid. Code, § 210.) As such, the trial court's ruling was well within its discretion.[7]

The trial court specifically relied on *People* v. *Lamb,* 24 Cal.App.3d 378, 381 [101 Cal.Rptr. 25], which is precisely in point. There the informant had told the police that he had been purchasing from *"Welo"* Lamb at a certain address. When the place was later raided, commercial quantities of narcotics were found inside the house. Defendant—*Leonard* Lamb— was arrested when he attempted to flee in his underwear through the back door. Defendant's motion to learn the identity of the informant was denied. He was then convicted of possession for sale. On appeal the court reduced the conviction to simple possession, stating: "The informant had told of sales, at the house involved, by 'Welo' Lamb. Nothing in the record before us indicates any identity between 'Welo' and 'Leonard' Lamb. As the defendant points out, had the informant been available for interrogation, it

---

[6]In this respect the case at bar is quite different from *People* v. *Acuna,* 35 Cal. App.3d 987 [111 Cal.Rptr. 878], where, on reasonably similar facts, discovery of the informant's identity was denied. In *Acuna* three balloons of heroin were found in defendant's pants pocket at the time the search warrant based on the informant's information was executed. There was, however, no suggestion that the informant's evidence could lend credence to a defense theory that the defendant's possession of a commercial amount was only a knee-jerk reaction to a police raid. (35 Cal.App.3d at p. 992. See *Williams* v. *Superior Court,* 38 Cal.App.3d 412, 424 [112 Cal.Rptr. 485].)

[7]That the evidence is close to the no man's-land between relevance and "remoteness" cannot be doubted. Our holding that the trial court was within its discretion in ruling that the evidence was relevant does not necessarily imply that it would have erred, had it ruled the other way. Trial court discretion at the borderline of relevance has been recognized by our decisions for decades. (*Mathews* v. *Dudley,* 212 Cal. 58, 60-61 [297 P. 544]; *Ritchey* v. *Watson,* 204 Cal. 387, 390 [268 P. 345]; *People* v. *Warner,* 270 Cal.App.2d 900, 908 [76 Cal.Rptr. 160]; *Larson* v. *Solbakken,* 221 Cal. App.2d 410, 420 [34 Cal.Rptr. 450]; *McGuire* v. *Navarro,* 165 Cal.App.2d 661, 664-665 [332 P.2d 361]; *Moody* v. *Peirano,* 4 Cal.App. 411, 418 [88 P. 380]; see McCormick, Evidence (2d ed.) p. 440.)

might have developed that the sales were by someone other than defendant and that defendant was only a user and not a seller. [Fn. omitted.]

"Ordinarily, the failure to identify a material witness informer results in a reversal. But, in the case at bench, there was ample and (as we have seen) admissible evidence of possession. The most that the informer could have done for defendant would have been to cast doubt on the defendant's status as a seller. Under those circumstances, the interests of justice are best served by reducing the judgment on count I to that of possession in violation of section 11500 of the Health and Safety Code. We so order." (*Id.*, p. 382.)

The People attempt to distinguish *Lamb*, but the attempted distinction proves too much. It is argued that in *Lamb* the informant's evidence would have aided the defendant because it would have negatived possession—inferred from his apparent residence at the premises—rather than possession for sale; but if that were so, the court should have reversed the judgment altogether, instead of reducing it to a conviction for simple possession.

The People, perhaps realizing the plausibility of defendant's theory, seek to postulate the following test for disclosure: Assuming that the informant were to testify precisely as indicated by the defendant in his articulated theory of defense, and that his testimony were fully credited by the trier of fact and wholly uncontradicted, if the trier of fact would nonetheless be lawfully entitled to convict the defendant, then the informant's identity need not be disclosed. This formula is in conflict, however, with the rule set forth above that the informant's identity must be disclosed if there is a possibility that his testimony might result in defendant's exoneration. (*People* v. *Garcia, supra,* 67 Cal.2d 830, 839-840.) *Garcia* and its numerous progeny do not proceed on the theory that the informant's testimony would necessarily exonerate the defendant, but only that the testimony might, when taken together with other evidence, tend to raise a reasonable doubt in the mind of the trier of fact which would result in the defendant's exoneration.[8]

---

[8]*People* v. *Borunda, supra,* 11 Cal.3d 523, is typical. According to the police the informant emerged from defendant's apartment with a *red* balloon containing heroin which he had just purchased there. A raid of the apartment followed immediately. Again according to the police, defendant was arrested while flushing a *green* balloon containing heroin down the toilet. Defendant's sister gave testimony to the effect that defendant was arrested in the living room and that the officer admitted that all he retrieved from the bathroom was an empty plastic bag. (*Id.* at p. 526.) The Supreme Court held that the informant's identity was discoverable. If he should testify that what he delivered to the officer was a *green* balloon, then the jury could have a reasonable doubt that the officer had offered as evidence the balloon obtained by the in-

Defendant, however, is on extremely shaky ground with respect to his contention that the informant's identity is relevant to the included offense of possession. If the jury should have a reasonable doubt that it was defendant who had disposed of the balloons found in the bathroom, that would be the end of the problem. If it entertains no such doubt, we do not see how the expected evidence from the informant could create one. (Cf. *People* v. *Goliday*, 8 Cal.3d 771, 783 [106 Cal.Rptr. 113, 505 P.2d 537].)[9]

■ The trial court apparently reached this same conclusion since it offered the People the option of reducing the charge to simple possession as an alternative to dismissal of the information. Despite the People's failure to accept this alternative, it appears to us that the trial court should have reduced the charge to simple possession of heroin on its own initiative. Having correctly concluded that the informant's testimony was not essential to a fair trial of the charge comprising the lesser included offense, the court erred in dismissing the information. (*People* v. *Superior Court, supra,* 19 Cal.App.3d 522, 534; Evid. Code, § 1042, subd. (d).)

The judgment (order dismissing the information) is reversed with instructions to the trial court to reinstate a charge of possession of heroin. (Health & Saf. Code, § 11350.)

Hastings, J., concurred.

**STEPHENS, J.**—I would reverse the order of dismissal. The prosecution was under no duty to divulge the name of the informant. (*Theodor* v. *Superior Court,* 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]; *People* v. *Garcia,* 67 Cal.2d 830, 836-837 [64 Cal.Rptr. 110, 434 P.2d 366].) Here, the informant could not have testified in such manner as to infer that defendant merely possessed the narcotic but did not possess it for sale. The fact that another person who was not on the premises at the time of defendant's arrest had sold narcotics to the informant at the premises where defendant was arrested gives rise to no exculpatory inference as it relates to defendant. The majority argue that an inference might be drawn that de-

formant. (P. 523.) The result of *Borunda* is quite inconsistent with the People's novel theory; the jury could fully accept the informant's testimony that he delivered a green balloon to the officer, without necessarily doubting that when defendant was arrested he was in the process of flushing another green balloon down the toilet.

[9]A similar point, apparently based on *People* v. *Mijares, supra,* 6 Cal.3d 415, was noted but not decided in *People* v. *Borunda, supra,* 11 Cal.3d 523, 528. In any event, in *Borunda* the sale to the informant immediately preceded the raid, while here there was a delay of over two weeks. We further note that the defendant in *Borunda* was not under the influence when arrested and that the holding of *Mijares* that the law does not forbid a fleeting possession for the sole purpose of abandonment, applied only to the defense version that the defendant had not, himself, taken heroin. (6 Cal.3d at pp. 421-422.)

fendant possessed the narcotic not for sale but for personal use or only to destroy if the informer testified he had purchased contraband from a person other than defendant. I cannot follow this gossamer logic, whether it finds support in the decision of *People* v. *Lamb,* 24 Cal.App.3d 378 [101 Cal. Rptr. 25] or not.