[Crim. No. 27078. Second Dist., Div. Four. Dec. 23, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
EDWARD TOLLIVER et al., Defendants and Respondents.

**COUNSEL**

John E. Howard, Acting District Attorney, Harry B. Sondheim, Donald J. Kaplan and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Morrise Davis and James L. Garcia, Jr., under appointments by the Court of Appeal, for Defendants and Respondents.

## OPINION

JEFFERSON (Bernard), J.—In this action defendants Edward Tolliver and Bernice Calep were charged with the commission of three felony offenses—all occurring on September 11, 1972. Count I of the information charged that defendants had the narcotic, heroin, in their possession for sale in violation of Health and Safety Code section 11500.5.[1] Count II charged that defendants had in their possession for sale a restricted dangerous drug, to wit, secobarbital, in violation of Health and Safety Code section 11911.[2] Count III of the information charged that defendants had in their possession for sale the narcotic, marijuana, in violation of Health and Safety Code section 11530.5.[3] By an amendment to the information a prior conviction of a felony was alleged against defendant Edward Tolliver. Defendants entered pleas of not guilty to these charges.

Defendants moved to suppress evidence pursuant to Penal Code section 1538.5. There was a pretrial hearing on this motion as well as on defendants' motion to require the People to disclose the identity of an informer.[4]

At the conclusion of the hearing, the trial judge denied the motion to suppress, but granted the motion for disclosure. The People, through the investigating police officer who testified at the hearing, having claimed the privilege for nondisclosure of an informer's identity, the trial judge made a finding under Evidence Code section 1042, subdivision (d) that there was a reasonable possibility that nondisclosure might deprive defendants of a fair trial and, accordingly, invoked against the prosecution the sanction of dismissal of the information.

The People appeal from this order of dismissal pursuant to Penal Code section 1238, subdivision (a)(8).

In the afternoon of September 11, 1972, Ronald J. Gilbert, a police officer for the City of Los Angeles, talked with an informant who told Officer Gilbert that he knew of a couple, a man by the name of Melvin—a male Negro in his thirties and of slender build, and a female

---

[1]See, now, Health and Safety Code section 11351.

[2]See, now, Health and Safety Code section 11378.

[3]See, now, Health and Safety Code section 11359.

[4]A prior motion to suppress evidence under Penal Code section 1538.5 was granted and on appeal the order was reversed and the trial court directed to re-hear the motion. The present case deals with the second hearing by the trial court of the motion to suppress.

by the first name of Bernice—also a Negro in her thirties and of a slim and slender build, who were residing at 2123 East 115th Street in Los Angeles. The informant further told Officer Gilbert that these persons were selling heroin from the premises; that the informant had been there on a number of occasions in the past and had personally purchased heroin from each of these persons on separate occasions and had observed these persons selling narcotics and dangerous drugs to other people who came to the residence.

The informant also told Officer Gilbert that Melvin carried a gun, a small .38 caliber Smith and Wesson, and that at some prior time Melvin had used this gun to pistol-whip a brother of Bernice over a narcotics transaction.

Shortly thereafter, on the same date, the informant was skin-searched and given $20 to proceed to the location and attempt to make a purchase of heroin from Bernice and Melvin. The informant was driven to an area within a short distance of the premises at 2123 East 115th Street. He was watched by police officers stationed at various locations to make sure that he did not come in contact with any person on his trip to the premises. The informant was seen by one of the police officers to go into the premises and subsequently leave the premises. The informant returned to Officer Gilbert and gave the officer a balloon which contained heroin, and which the informant said he had purchased from Bernice, with Melvin standing by and overseeing the transaction.

The informant told Officer Gilbert that Bernice was wearing a blue jumpsuit, appeared to be intoxicated, and that Melvin was dressed in dark colored trousers and was bare chested.

At about 5 p.m. on this same afternoon, Officer Gilbert, accompanied by other police officers, went to the premises on East 115th Street, observed that the front door was open and that several persons were inside. The police officers then made an entry into the premises, with one officer displaying his police badge. The officers found two males and two females in the living room in addition to a woman in a blue jumpsuit. The woman in the jumpsuit told the officers that her name was Bernice Calep. She is a defendant herein. Officer Gilbert saw no male in the living room fitting the description of Melvin given by the informant.

The officers went upstairs in the premises to one of two bedrooms and observed lying on the bed a man who appeared to be asleep. He was

bare chested and wearing a pair of dark colored trousers. Upon being asked his identification, the man stated that his name was Edward Tolliver, that he sometimes used the name of Melvin Gully, but that his real name was Eddie Tolliver. He is a defendant herein. The officers removed from under the pillow on the bed a .38 caliber revolver.

The officers asked Tolliver if he would give permission to make a search of the premises. Tolliver replied that he did not live at the location and so could not give permission for the search, and that the officers would have to talk to Bernice. Officer Gilbert then went downstairs and talked with defendant Bernice Calep and requested from her permission to search the premises. Defendant Bernice Calep stated that she would not give any consent to a search.

Defendants Tolliver and Calep were handcuffed and remained on the premises with other officers while Officer Gilbert and another officer left the premises to obtain a search warrant. When defendants were handcuffed they were not advised that they were under arrest. Officer Gilbert testified that he did not consider this to be a formal arrest although, technically, the defendants could be considered to be under arrest. It was a few minutes after five o'clock when Officer Gilbert and another officer left the premises in order to obtain a search warrant. At about 6 p.m., Officer Gilbert talked to another police officer who knew the informant, and this police officer stated that the informant was reliable because he had worked with him on two prior occasions and on these two occasions the informant had proved to be reliable. This information was placed in the affidavit used to obtain a search warrant. A search warrant was obtained and the officers returned to the premises at approximately 10 p.m. that same evening of September 11, 1972.

Upon a search of the premises, made after 10 p.m., the contraband which provided the basis for the charges against defendants was found in the kitchen and in the two bedrooms upstairs, including the east bedroom where defendant Tolliver had been discovered on the bed. One hundred capsules of secobarbital were found in a dresser drawer of this same bedroom. Officer Gilbert testified that quantities of 100 were a normal method of packaging barbituates for wholesale. Items of men's clothing were found in this same bedroom. Although these clothing items appeared to fit defendant Tolliver, they would also have fit one of the two other men found on the premises upon the officers' entry. Underneath the bed in the same bedroom was found narcotic paraphernalia commonly used by persons preparing heroin for street

sale. Marijuana was found in both bedrooms. Heroin was found in a cabinet in the kitchen.

There was testimony at the hearing that the heroin was packaged in a manner that would indicate that it would sell for $50 or $70 for a raw spoon, rather than the regular package that would be sold to a user on the street. Papers were found in various parts of the premises that bore defendant Calep's name, while others bore defendant Tolliver's name.

The search which discovered the contraband lasted approximately two hours. After seizure of the contraband, Officer Gilbert formally told defendants that they were under arrest. The officers left the premises with the defendants at approximately midnight.

During the hearing on the motions to suppress and to disclose the identity of the informant, the testimony indicated that upon being taken from the premises after his arrest, the defendant Tolliver took a jacket out of the bedroom closet and put on shoes obtained from the same bedroom.

It is significant that the evidence produced at the hearing as to papers found on the premises which bore the name of Edward Tolliver indicated that they were all addressed to Tolliver at various other locations. The testimony established that no papers were found in Tolliver's name which indicated an address of Tolliver as being the premises where the contraband was found and seized. During the testimony of Officer Gilbert, defendants sought disclosure from him of the identity of his informant. Officer Gilbert refused to disclose the informant's identity on the basis of a claim of privilege for nondisclosure.

As a part of the proceedings of the hearing on the two motions, the trial judge conducted an *in camera* hearing at which only Officer Gilbert, the trial judge and the reporter were present. The transcript of the *in-camera* proceedings was ordered sealed but has been made available to us on this appeal.

We have reviewed the transcript of the *in camera* proceedings held by the trial judge. It reveals nothing of consequence to the determination of the issue before us. The *in camera* proceedings concerned the matter of whether testimony by Officer Gilbert as to where he next saw the informant following the day of the search of the premises where defendants were found, would provide defendants with sufficient infor-

mation from which they could deduce the identity of the informant. The trial judge concluded that such testimony by the police officer would contravene his claim of privilege for nondisclosure. The trial judge, therefore, did not require that he testify as to this matter.

The thrust of the People's appeal from the order dismissing the information is that evidence adduced at the hearing does not support the trial judge's finding that the informant was a material witness, entitling defendants to a disclosure of his identity or a dismissal of the information pursuant to Evidence Code section 1042, subdivision (d).

By judicial interpretation founded upon due process principles of the federal and state Constitutions, the rules relating to the privilege for nondisclosure of an informant's identity set forth in Evidence Code sections 1041-1042 have become fairly fixed and standardized. Thus, the most important principle that emerges from the decisional law is that the prosecution cannot successfully invoke the privilege for nondisclosure of an informant's identity if the defendant demonstrates a reasonable *possibility* that the informer *could* give evidence on the issue of guilt that *might* result in defendant's exoneration. This rule of evidence is founded on the principle that nondisclosure in this situation would result in a denial of a fair trial to defendant. (*Honore* v. *Superior Court* (1969) 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169]; *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Borunda* (1974) 11 Cal.3d 523 [113 Cal.Rptr. 825, 522 P.2d 1].)

Although the decisions speak in terms that the privilege for nondisclosure of an informant's identity does not apply if the informer is a material witness for a defendant, the definition of "material witness" for this purpose means an informant with respect to whom there is a reasonable possibility that he could give evidence bearing on defendant's guilt that might exonerate defendant of the criminal charge. (See, e.g., *Honore, supra.*)

To obtain disclosure of an informant's identity, the defendant is not required to show that the informer was either a participant in the crime charged or an eyewitness thereto. Obviously, the participant-informant presents the clear-cut example of an informant who is a material witness on the issue of guilt or innocence. Nor is it required, in order to obtain disclosure of the informant's identity, that defendant establish that the informer *would* give favorable testimony. Defendant cannot be expected to know this about an undisclosed informant.

Likewise, it is not required for a defendant to obtain disclosure of an informant's identity, that he demonstrate a reasonable possibility of the exact testimony the informant is expected to give. Such a requirement would impose an insuperable task.

However, defendant's showing to obtain disclosure of an informant's identity must rise above the level of *sheer* or *unreasonable* speculation, and reach at least the low plateau of reasonable possibility. If defendant's showing falls short of demonstrating a reasonable possibility that the informer could give evidence favorable to defendant's exoneration, the prosecution's claim of privilege for nondisclosure of the informer's identity must be sustained.

 In the case at bench, it is the contention of the People that the case falls within this latter principle; that defendants' showing does not rise above the level of sheer speculation and, hence, falls short of demonstrating a reasonable possibility that the informant could give evidence favorable to defendants' exoneration.

 In the instant case, neither defendant testified at the hearing in support of the motion for disclosure of the informant's identity. Such testimony, however, is not a necessary ingredient to obtain disclosure. A defendant may rely upon reasonable inferences that flow from the prosecution's evidence. Nor is the hearsay exclusionary rule a complete barrier. Thus, the affidavit to support the search warrant that recites the informant's communication to the police officer is considered admissible evidence for this purpose.

In the instant case, it is also the People's contention that defendants are barred from having a right to disclosure of the informant's identity because the defendants offered no explanation of the presence of narcotics in the premises where both the narcotics and the defendants were found. In this connection, the People rely on *People* v. *Acuna* (1973) 35 Cal.App.3d 987, 992 [111 Cal.Rptr. 878], wherein the court remarked: "There is not the slightest possibility that the informant planted the narcotic, nor does defendant make such a claim, and defendant has offered no explanation for the presence of the heroin in his pocket."

But *Acuna* is clearly distinguishable from the case at bench. The quoted statement from *Acuna* must be considered in the context of the factual setting there involved. In *Acuna,* upon a search of the premises pursuant to a search warrant, three balloons of heroin were found "on

[defendant's] person *in his pants pocket.*" (*Acuna, supra,* 35 Cal.App.3d 987 at p. 989.) (Italics added.) In addition, in *Acuna,* the search turned up a dish containing 5.9 grams of heroin in the residence, but the prosecution of defendant in *Acuna* for possessing heroin for sale was based solely on the evidence of the heroin found on the defendant's person—not on the evidence of the heroin found in the dish on the premises. This explains the court's conclusion in *Acuna* that there was no possibility that the informer could give any testimony that would exonerate defendant of the charge of his possession of heroin that was taken from his person—his pants pocket.

The *Acuna* court was careful to point out that any claim of defendant would be irrelevant if predicated on the theory that the informer could testify that the heroin found in the dish might have belonged to someone else, or that defendant was a mere visitor to the apartment, or that a co-defendant was the only resident of the apartment. In view of the prosecution's stance in *Acuna,* any such testimony from the informer would have no tendency in reason to negate any element of the charged offense—that defendant possessed for sale the heroin found in his pants pocket.

The lack of relevancy argument pointed out in *Acuna* is not available to the People to be asserted against the defendants in the instant case, because none of the counts of the information charged defendants with sale of narcotics to the informer on any occasion that the informer said he made a purchase from either defendant. Nor does the evidence presented at the hearing establish that any count of the information can be construed as charging that any contraband was found on the person of either defendant to support the charge of possession for sale.

The People also rely on *People* v. *Long* (1974) 42 Cal.App.3d 751, 756 [117 Cal.Rptr. 200], as being analogous to the case at bench because, in *Long,* as in the case at bench, it is agreed that no claim is made that someone else "was doing business on the premises . . . ." The *Long* court held, however, that the informant's testimony could not negate the People's evidence that defendant was in possession of the heroin charged because, when the search was made, the searching police officer forced entry into the residence after hearing running footsteps, and observed defendant coming out of the bathroom; at the same time, the officer also observed and retrieved a balloon on the bathroom floor beside the toilet and retrieved five more balloons which were inside the toilet. In the

instant case, there is no such evidence of the exercise of dominion and control of contraband by defendants as appeared in *Long*. The searching and arresting police officers in the instant case observed no activity by defendant Calep or defendant Tolliver which is reasonably capable of being construed as an exercise of dominion and control over any specific narcotics, as the evidence in *Long* reflected with respect to the balloons found in the bathroom.

██ The People assert that the only claim made by defendant Calep that the informer could give testimony in her favor is to the effect that the informer might testify that someone else was *also* in possession of the narcotics found on the premises. The legal theory advanced by the People is certainly sound—that if defendant Calep's theory of the materiality of the informant's testimony rests upon an assumption that the informant might testify that another person was a co-possessor of the contraband with her—an insufficient showing has been made to obtain disclosure. The reason for such result is simply that, in a possession-of-narcotics charge, "[c]onviction, of course, need not be predicated upon exclusive possession, and a showing of nonexclusive possession would not exonerate defendant." (*People* v. *Hambarian* (1973) 31 Cal.App.3d 643, 659 [107 Cal.Rptr. 878].)

██ But the People misconceive the thrust of defendant Calep's argument. Calep's point as to materiality of the informant's testimony is exactly the same as that of defendant Tolliver. The contention may be advanced by both defendants that the informer might testify that neither Calep nor Tolliver was in possession of any of the contraband found in various places on the premises—that the contraband which defendant Calep sold to the informant in the past came from a third person in the premises who was in control of the contraband and that in the case of defendant Tolliver's sale of narcotics to the informant in the past, the contraband also came from a third person present on the premises who was in control of such contraband.

The record reveals that the informant did not tell Officer Gilbert that he saw, prior to any sale transaction with defendant Calep or defendant Tolliver, where either defendant obtained the contraband, whether from the other, whether from that defendant's person, or whether from a specific area in the premises such as a cupboard in the kitchen, a drawer of a chest of drawers, or a suitcase from under a bed.

The People assert that the evidence is uncontradicted that the two defendants were in possession of the premises, which establishes their possession of the contraband found on the premises, and that such possession is not subject to being negated by any possible testimony of the informer. But the People overlook the fact that defendant Tolliver, upon being asked to give his consent to a search of the residence, replied that he did not live on the premises. Furthermore, it is conceded that the numerous documents and papers in defendant Tolliver's name, found in various parts of the premises, were all addressed to defendant at some other location. It is especially significant that no documents or papers bearing defendant Tolliver's name included the address of the premises where the contraband was found.

All of these contentions of the People flow from the premise that defendants made no showing at the hearing of what their defense would be and, therefore, defendants could not possibly explain how any testimony from the informant could exonerate them. This premise by the People poses this question: At the hearing on a motion for disclosure of an informant's identity, must a defendant articulate with any definiteness his theory of defense in order to obtain disclosure of the informant's identity?

It is highly questionable as to whether there is any such requirement in the law pertaining to a defendant's right to disclosure of an informant's identity. However, we do find such a principle enunciated in *Long*. *Long* first quotes the well-established principle that, to establish that an informant's identity is essential to his right to a fair trial, a defendant "need only demonstrate a reasonable possibility that the informant could give evidence on the issue of guilt which *might* result in his exoneration." (*Long, supra,* 42 Cal.App.3d 751 at p. 755.) (Italics in original.) But *Long* then adds: "To this end he must be able to articulate a theory of defense as to which the informant's evidence would be relevant. [Citation.]" (*Long, supra,* at p. 755.)

*Long* cites *People v. Sewell* (1970) 3 Cal.App.3d 1035, 1039 [83 Cal.Rptr. 895] for this articulation-of-a-theory-of-defense view. It is true that *Sewell* states: "In most reported cases, it takes the form of an articulation of a theory of defense based upon defense or prosecution evidence presented at the trial or upon declarations filed in support of the motion to disclose. Absent a showing of the theory of defense *or other pertinent material,* a court may speculate upon but cannot determine the existence of a reasonable possibility that the evidence to be obtained

from the anonymous informer may be helpful to the defense." (*Sewell,* *supra,* 3 Cal.App.3d 1035 at p. 1039.) (Italics added.)

*Sewell,* however, does not cite any authority for its conclusion of the necessity of an "articulation of a theory of defense" by defendant, and that, absent such articulation, a finding by the trial judge that disclosure is necessary to guarantee defendant a fair trial, amounts to unwarranted *speculation.*

The premise that articulation of a defense by a defendant is a necessary concomitant of the rule of what must be demonstrated to entitle a defendant to disclosure of an informant's identity, is not required by the case-law authorities which set forth the rule, and should not be read into the law as stated by *People* v. *Borunda* (1974) 11 Cal.3d 523 [113 Cal.Rptr. 825, 522 P.2d 1]; *People* v. *Hunt* (1971) 4 Cal.3d 231 [93 Cal.Rptr. 197, 481 P.2d 205]; *Honore* v. *Superior Court* (1969) 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169] and *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366].

■ We do not agree with *Long* and *Sewell* that the failure of a defendant to specifically articulate a theory of defense on his motion for disclosure of the identity of an informer necessarily amounts to "speculation on [defendant's] part that in some undefined way that disclosure might provide evidence of an unarticulated theory of defense." (*Sewell, supra,* 3 Cal.App.3d 1035 at p. 1039.) The very fact that a defendant is not required to do more than demonstrate a reasonable possibility that the undisclosed informer could give evidence on the issue of guilt that might result in defendant's exoneration indicates to us that a specific articulation of a defense is not required in order for a defendant to obtain disclosure of an informant's identity as an element of his right to a fair trial.

It is our view that if, from the People's evidence, alone, there appear reasonable possibilities of favorable testimony by the undisclosed informant, defendant is entitled to disclosure even though defendant has not articulated a specific theory of defense.

It has been argued, with a marked degree of cogency, that the very statement of the rule of disclosure of an informant's identity as an element of defendant's right to a fair trial, necessarily includes some speculation; that the question to be determined is whether the speculation as to what the informer might testify is *reasonable* speculation as

contrasted with *unreasonable* speculation. Thus, in *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412 [112 Cal.Rptr. 485], it was pointed out that, although *People* v. *Goliday* (1973) 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537] talked in terms of the court's not needing to speculate about what an informer might testify, still, in determining that the prosecution had a duty of disclosure under the circumstances presented in that case, the *Goliday* court *"did in fact speculate"* as to the testimony the two informers might have given in support of defendant's defense. (*Williams, supra,* 38 Cal.App.3d 412 at p. 420.) (Italics in original.) "It seems, accordingly, to some degree, speculation may properly play a part in the application of a standard which is couched in terms of a reasonable 'possibility' that the undisclosed informant could give evidence which 'might' result in the defendant's exoneration." (*Williams, supra,* 38 Cal.App.3d 412 at p. 420.)

That the *Williams* court supports our view that articulation of a defense is not a required showing by defendant to obtain disclosure of an informant's identity is evidenced by the statement of *Williams* that "[s]ince speculation concerning the informer's possible testimony can be as wide-ranging as the ingenuity of defense counsel, disclosure in the case of the nonparticipating noneyewitness informer necessarily depends on the evidentiary showing made concerning the informer's relationship to the alleged crime. 'The words "might" and "possibility" [in the Supreme Court's standard] have vague and almost limitless perimeters that must be determined on a case-by-case basis and on review great weight should be afforded the trial court's determination.' " (*Williams, supra,* 38 Cal.App.3d 412 at p. 421.)

Factually, the case at bench is not unlike the facts of the *Williams* case. There, the court held that defendant was entitled to disclosure of the informer's identity on penalty of dismissal if disclosure was not forthcoming. In *Williams,* defendant and another person were reported by an informer to have been engaged in selling narcotics from a certain address and that the informer had been present at the residence in the past and had seen defendant and the other person selling heroin from the residence and the informer had been present when both were preparing heroin in packages in order to sell the same. As in the instant case, when a search warrant was secured and a search was made of the premises, defendant and a young man were in the residence. There were two bedrooms and a search of defendant's bedroom uncovered heroin found in a dresser drawer among her underclothing.

The *Williams* court pointed out that the elements of the crime of possession of heroin for sale, which was the charged crime against defendant, were four in number: (1) actual or constructive possession of the narcotics, (2) for the purpose or intent of selling it, (3) with knowledge of its presence, and (4) with knowledge of its narcotic character. The *Williams* court pointed out that proof of defendant's possession was circumstantial in the sense that it was imputed from the evidence of heroin in *her* dresser drawer. In similar fashion, the evidence of possession in the case at bench is circumstantial and no stronger in nature than that found in *Williams.*

■ *Williams* also pointed out that there was a reasonable theory and possibility that the informer might testify that defendant was merely present when the informer was at the residence; that the informer's testimony might show that the heroin was sold, packaged, and controlled solely by the second person indicated by the informer; and that from such testimony the trier of fact might infer that defendant had no control or right to control the heroin later found in her dresser and that she herself had no intent to sell contraband. In the case at bench, as in *Williams,* the undisclosed informer might have given testimony in favor of defendant Calep or in favor of defendant Tolliver, which would throw the onus of control or right to control the narcotics found in the premises on the other defendant or on some third person present in the residence when the informer was there.

■ In the case at bench, the trial judge did not set forth his reasons for finding that the undisclosed informer would be a material witness for each defendant. But such is not required. If a review of the record indicates there was evidence to support the trial court's finding that defendants were entitled to disclosure of the identity of the informer, we are required to sustain the trial court's finding. We do so here.

The order appealed from is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1976. Clark, J., was of the opinion that the petition should be granted.