[Crim. No. 43887. Second Dist. Div. Seven. June 21, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID SALDANA, Defendant and Appellant.

[Crim. No. 44974. Second Dist., Div. Seven. June 21, 1984.]

In re DAVID SALDANA on Habeas Corpus.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Thomas Bleauvelt and J. Courtney Shevelson, Deputy State Public Defenders, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Robert F. Katz and Carol Slater Frederick, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FIELDHOUSE, J.***—David Saldana and his brother, Edmundo Saldana, were charged with one count of possession of heroin for sale (Health & Saf. Code, § 11351; count I). David Saldana was also charged in a second count with possession of marijuana for sale (Health & Saf. Code, § 11359; count II). The trial was severed and the appellant, David Saldana, was found guilty by a jury as to both counts charged. He was sentenced to state prison to serve a concurrent term of two years on count I and sixteen months on count II.

David contends that the conviction for possession for sale of heroin must be reversed because the trial court judge committed prejudicial error when he failed to instruct the jury *sua sponte* on the lesser included offense of simple possession. By way of petition for writ of habeas corpus, David further contends that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution, when defense counsel failed to make a discovery motion for the name and whereabouts of an informant mentioned in a search warrant. David also claims that when defense counsel elicited prejudicial hearsay testimony from a prosecution witness, he sub-

---

*Assigned by the Chairperson of the Judicial Council.

sequently failed to move for a mistrial or order striking or limiting the testimony, thereby prejudicing David's defense.

Although we find that David was not denied effective assistance of counsel, we reverse his conviction of possession for sale of heroin because, on the facts of this case, the trial court should have given an instruction on the lesser and necessarily included offense of simple possession; otherwise we affirm the judgment.

## FACTS

On the morning of May 28, 1982, at approximately 7:30 a.m., Detective Nelson of the Los Angeles Police Department narcotics division, along with nine other officers, arrived at David's home in San Pedro for the purpose of executing a search warrant. The warrant named David's brother, Manuel Saldana, and was supported by an affidavit based on informant information implicating Manuel in the sale of heroin from the residence approximately eight days earlier. Detective Nelson approached the house, followed by other officers, some of whom carried highway flares while others drew their guns. A Doberman pinscher sat on the porch. Detective Nelson saw David's mother, Maria Carrasquillo, come out the screen door and walk onto the porch. Subsequently, the Doberman barked and ran away from the house. After an announcement, the officers entered the residence while Maria began to scream hysterically that Manuel was not there.

Detective Nelson testified that once inside the house, he did not see anyone immediately until he walked into the second bedroom on his left and observed two beds. David, who was wearing a T-shirt and shorts and lying on one of the beds, quickly placed his bare hand into the headboard of the bed. In order to protect his personal safety, Detective Nelson removed David's hand from the headboard and brought him into the living room where he was handcuffed. Nelson testified that he then observed Paul and Hortencia Marentz, David's sister and brother-in-law, emerge from the first bedroom soon after Nelson brought David into the living room. Subsequently, Detective Manlove searched the second bedroom. He discovered a Ziploc bag containing 18 balloons of heroin in the headboard of the bed where David was caught by Detective Nelson. Detective Manlove then called Nelson back to the second bedroom where he showed Nelson the plastic bag containing the balloons. Six plastic bags of marijuana were also found in a dresser in the same bedroom. It was later determined that David and his mother, Maria, shared the bedroom. The bed with the headboard where the heroin was found belonged to Maria.

Detective Nelson also testified that in his expert opinion, the 18 balloons of heroin and the marijuana were packaged for sale, based on the manner

of packaging, quantity, and resale value per packaged unit, and the fact that David was determined to be a nonuser of heroin.

In the living room, Nelson confronted David with the balloons found in the bedroom whereupon David denied being caught with the balloons, but admitted selling marijuana.[1]

Officer Waugh testified that he followed Detective Nelson into the house. He did not immediately see anyone inside the house until Detective Nelson brought David out of his bedroom. Then he saw Paul and Hortencia come out of their bedroom almost immediately after he entered the house. He remained upstairs for five minutes before going down to the basement. He did not go into David's bedroom.

Meanwhile, Officer Waugh and other officers proceeded to the basement via an outside entrance. There, they found David's brothers, Manuel and Edmundo Saldana. A search of the basement revealed three beds separated by boxes serving as room dividers. Balloons, syringes, lactose, a funnel and measuring scale, and a scanner that monitored police frequencies were found on a table in the basement. Nelson testified that 20-30 minutes after securing David, he went down to the basement and then brought Manuel Saldana upstairs. Manuel was determined to be under the influence of heroin to the extent of being "as loaded as anybody gets on heroin without over-dosing." He had 135 puncture wounds on his arms, ranging from fresh to 15 days old.

After searching the basement for 15-30 minutes, Officer Waugh came back upstairs and searched Paul and Hortencia's bedroom. He testified that in his opinion the heroin and marijuana found in David's bedroom were

---

[1][MR. DONOGHUE] "Q. Did you make any other inquiry of him after asking him he understood?
[DETECTIVE NELSON] "A. No.
"Q. Did you ask him if he wished to talk to you?
"A. I did, yes.
"Q. And what was his answer to that?
"A. He told me he could talk.
"Q. What did he say at that time, Detective?
"A. He said he hadn't done anything; that I didn't see anything in his hands; that the heroin that I had found wasn't in his hands and that I didn't see him in possession of it.
"Q. Did he say anything else?
". . . . . . . . . . . . . . .
"A. He indicated that the weed was his. His words, 'The weed is mine. I don't know anything about the bag of spoons. You didn't catch me with them in my hand. I sell a little weed. That's all.'
"Q. Now, that's indicating that the bag of spoons—what was he referring to?
"A. 'Spoon' is a vernacular which is used for a usable quantity, a balloon, rolled and tied, which contains usually about two-tenths of a gram of heroin."

possessed for sale because of the amount, packaging and resale value per unit.

He also testified that in his experience it was very common for a user and a nonuser both to be dealing out of the same house. Moreover, it is more common to find that a dealer of different drugs will often stash a large quantity of drugs in one place, and if a person deals in two different types of drugs of equal size, they would be found in the same place. However, it is also common for a user to store his narcotics in a place different than where they are used or packaged. In other words, the tools of use and packaging may be kept in one area of the house while the stash is stored elsewhere.

Paul and Hortencia Marentz both testified that they came out of the first bedroom almost immediately after the officers entered the house.[2] They both saw David in the living room standing near the kitchen door next to an officer dressed as a cowboy. Maria and three other officers were also in the living room. Paul testified that he saw an officer go into David's bedroom and return with a box. The officer did not say what he found. Hortencia testified that when she first saw David, he was in the living room near the kitchen and not yet handcuffed. As she stepped into the living room, she saw an officer grab David and handcuff him. Nelson was seen for the first time by both Paul and Hortencia some 15-20 minutes later when he came up from the basement with Manuel.

Paul and Hortencia Marentz, as well as David, testified that Manuel was not living at the residence and had not been seen there for over a month. Therefore, all three were surprised to see him emerge from the basement with Detective Nelson.

David took the stand and denied being confronted with the 18 balloons. He also denied making the statement to Officer Nelson that, "[t]he weed is mine. I don't know anything about the bag of spoons. You didn't catch me with them. You didn't see them in my hands, did you? I sell a little weed, but that's all." He testified that the first time he knew about the 18 balloons was when his brother, Edmundo, told him about them while they were in the same cell at Harbor Division Station. Moreover, David denied being found by Detective Nelson in his bedroom. Rather, he was first seen by Detective Nelson while he (David) stood outside his bedroom door near the living room. He had been in the bathroom getting ready for work when he

---

[2]Detective Nelson, on the other hand, testified that he saw Paul and Hortencia come out of their bedroom *after* he brought David out of his bedroom. Two or three minutes later, Detective Manlove emerged from David's bedroom urging Detective Nelson to look at the headboard.

heard his Doberman barking. He headed toward the living room and saw two officers and his mother. It was not until 10 minutes later that he saw Detective Nelson for the first time coming from the basement with Manuel.

At the conclusion of the trial the jury was instructed that joint and/or constructive possession was sufficient to constitute the possession prohibited by Health and Safety Code sections 11351 and 11359. An instruction on simple possession of marijuana as a lesser included offense of count II was given. However, no instruction on the necessarily included offense of simple possession of heroin was given as to count I. The jury returned a guilty verdict on both counts of possession of heroin and marijuana with intent to sell.

I. THE TRIAL COURT'S FAILURE TO GIVE AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF SIMPLE POSSESSION CONSTITUTES REVERSIBLE ERROR

■ The question on appeal is whether the trial court's failure to instruct the jury *sua sponte* on the lesser included offense of simple possession of heroin amounted to prejudicial error requiring reversal of the conviction. We hold that it was reversible error for the trial court not to instruct the jury *sua sponte* on simple possession as there was sufficient evidence to warrant the jury's consideration of the alternative verdict.

■ It is well settled that "a defendant has a constitutional right to have the jury determine every material issue presented by the evidence; . . ." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) A trial court is required to instruct the jury "on the general principles of law relevant to the issues raised by the evidence," even where counsel has failed to make a request for the instruction. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) "[G]eneral principles . . . are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*Ibid.; People* v. *Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.3d 683, 348 P.2d 116].) The purpose of the instructions, therefore, is to ensure that the jury is sufficiently informed of the law in order to arrive at a just and fair verdict. (*People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892].)

■ Even if defense counsel objects, or in the absence of a request, the trial court must instruct the jury on all lesser included offenses "when the

evidence raises a question as to whether all of the elements of the charged offenses were present," but not when there is no evidence the offense was less than that charged. (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 715; *People* v. *Smith* (1978) 78 Cal.App.3d 698, 709 [144 Cal.Rptr. 330].) "Where the charged offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Mooney* (1983) 145 Cal.App.3d 502, 504 [193 Cal.Rptr. 381]; *People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649]; *People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409].)

Traditionally, the court was not required to instruct on the lesser included offense if defense counsel strategically took the position that the defendant must be guilty of the higher crime or be acquitted. (*People* v. *Cooper* (1968) 268 Cal.App.2d 34, 37-39 [73 Cal.Rptr. 608].) Recent cases, however, require that the instruction be given even where counsel strategically, mistakenly or ignorantly causes the jury to take an all-or-nothing approach. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311].) The policy behind the trial court's obligation to instruct *sua sponte* is to prevent the jury from being faced with an all-or-nothing verdict where " 'the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, [and where the] defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. (*People* v. *St. Martin, supra,* 1 Cal.3d 524, 533.)' (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 716.)" (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 324.)

In determining whether the court has a duty to instruct *sua sponte* on necessarily included offenses, the test is whether the evidence would justify a conviction of such an offense. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 325.) Where the defendant's testimony or version of the evidence seems remote, the jury must be afforded the opportunity to consider it if it could be accepted by a reasonable juror or at least raise a reasonable doubt. (*People* v. *Mooney, supra,* 145 Cal.App.3d 502, 506; *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281].) Moreover, the defendant is "entitled to an instruction based on the hypothesis that 'his testimony' is entirely true." (*People* v. *Coleman* (1970) 8 Cal.App.3d 722, 733 [87 Cal.Rptr. 554].)

In order to convict on the crime charged, i.e., possession of heroin with intent to sell, the prosecution had to prove that David had actual or constructive possession of a controlled narcotic, with knowledge of its narcotic nature and presence, and the specific intent to sell it. (Health & Saf. Code, § 11351.) Proof of the first two elements only (possession of a narcotic, with knowledge of its nature and presence) is sufficient to prove the

necessarily included offense of simple possession. (Health & Saf. Code, § 11350; *People* v. *Rosales* (1964) 226 Cal.App.2d 588 [38 Cal.Rptr. 329].)

■ In the present case, while we may not reweigh the evidence in order to determine that it was "not reasonably probable that a correctly instructed jury would have convicted defendant of the lesser included offense" (*People* v. *Sedeno, supra,* 10 Cal.3d 703, 720), we note that conflicting testimony was given by the witnesses. ■ Furthermore, the record is devoid of any direct evidence except that 18 balloons of heroin were found in the headboard of one of the beds in David's bedroom, that David was a nonuser of heroin and that Manuel was a known user and seller of heroin.

Therefore, at the very least, the prosecution was able to prove that David had constructive, if not actual, possession of the heroin since it was found in the bedroom over which he exercised joint dominion and control. (*People* v. *Mitchell* (1975) 53 Cal.App.3d 21, 24-25 [125 Cal.Rptr. 543]; *People* v. *Sotelo* (1971) 18 Cal.App.3d 9, 20 [95 Cal.Rptr. 486]; *People* v. *Jones* (1968) 267 Cal.App.2d 325, 327-328 [72 Cal.Rptr. 865].)

As to the remaining elements of simple possession and possession with intent to sell (i.e., knowledge of narcotic nature and presence, and intent to sell), the evidence was conflicting, as well as purely circumstantial. On the one hand, Detective Nelson testified that he caught David in his mother's bed reaching into the headboard, although he did not see David in actual possession of heroin; David denied being caught with heroin in his hand but admitted selling marijuana; in Nelson's opinion the heroin was possessed for sale because of the quantity found, the resale value of each unit, the manner of packaging, and the fact that David is a nonuser.

On the other hand, David denied being arrested by Nelson and making any statement to him; and he denied being caught on his mother's bed with his hand in the headboard. Likewise, David's sister and brother-in-law testified that Nelson was first seen coming up from the basement with David's brother, Manuel, and that David was arrested by another officer dressed in a cowboy outfit. Therefore, the evidence to support the elements of knowledge of the presence and nature of narcotics and intent to sell were based not on direct evidence but on circumstantial evidence.

The testimony of an officer, that in his opinion evidence of narcotics tools for use, such as fingerstalls, scales, mixing spoons, sugar and lactose, are intended for sale is sufficient to convict a defendant for possession of narcotics with intent to sell. (*People* v. *Aguilar* (1965) 232 Cal.App.2d 173, 177-178 [42 Cal.Rptr. 666], overruled on other grounds, *Lorenzana* v. *Su-*

*perior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].) However, the officer's opinion is merely circumstantial evidence of intent to sell, absent other direct evidence. Therefore, in the absence of direct evidence that a defendant possessed heroin for sale, but where there is direct evidence of simple possession, the defendant must be afforded the right to have the jury instructed on both simple possession and possession for sale of narcotics. (See *People* v. *Ruiz* (1975) 14 Cal.3d 163 [120 Cal.Rptr. 872, 534 P.2d 712].)

Respondent argues that since David denied all possession of the heroin, the jury, if it believed David's version was bound to acquit; if the jury believed respondent's theory, it was bound to find guilt of possession with intent to sell. In any case, respondent contends, if David was guilty at all, he was guilty of the greater offense.

Respondent's argument is misplaced, however. ■ Although some cases have held that failure to instruct on a defense is not required if the defendant denies all complicity (*People* v. *Tiner* (1970) 11 Cal.App.3d 428 [89 Cal.Rptr. 834], overruled on other grounds; *People* v. *Beagle* (1972) 6 Cal.3d 441, 451 [99 Cal.Rptr. 313, 492 P.2d 1]), it has also been held that a trial court's obligation to instruct *sua sponte* on all possible lesser included offenses which the evidence may tend to prove extends to cases where defendant's defense theory is inconsistent with the instruction.[3] (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 333-335; *People* v. *Sedeno, supra,* 10 Cal.3d 703, 717.)

For example in *People* v. *Mooney, supra,* 145 Cal.App.3d 502, the defendant was charged with burgling a motor vehicle. (Pen. Code, § 459.) The issue at trial was whether the car was unlocked when the defendant arrived, since burgling requires a forced entry into a locked vehicle. The court held that the court should have instructed the jury on tampering (Veh. Code, § 10852), which does not require that the vehicle be locked and which is a lesser included offense of burgling, since one cannot burgle a vehicle without tampering with it.

■ Similarly, in the case before us, simple possession of narcotics is a lesser included offense of possession of narcotics for sale, since one cannot possess narcotics with intent to sell without first being in actual or construc-

---

[3]"When the charged offense is one that is divided into degrees or encompasses lesser offenses, and there is evidence from which the jury could conclude that the lesser offense had been committed, the court must instruct on the alternate theory even if it is inconsistent with the defense elected by the defendant under the rule obliging the court to instruct on lesser included offenses discussed *supra.*" (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 717, fn. 7.)

tive possession. At trial, the issue was whether David intended to sell the heroin. The prosecution's evidence was purely circumstantial that David was a nonuser and in the detectives' expert opinions the narcotics were packaged for sale. Therefore, the test of whether jury instructions on the lesser included offense of possession are required is whether there is any evidence deserving of consideration by the jury, i.e., "evidence from which a jury composed of reasonable men could have concluded that" David possessed heroin, but without the intent to sell it. (*People* v. *Wickersham, supra,* 32 Cal.3d 307, 325; *People* v. *Flannel, supra,* 25 Cal.3d 668, 684-685, fn. 12.) ■■■ Thus, even though David's defense theory was to deny knowledge of the presence of narcotics and intent to sell, he is still entitled to the lesser included offense instruction since there was substantial evidence to prove constructive possession.

"Although the jury is free to believe otherwise, we cannot say, as a matter of law," that David's version could never be accepted by a reasonable juror or at least raise a reasonable doubt. (See, *People* v. *Carmen, supra,* 773.)" (*People* v. *Mooney, supra,* 145 Cal.App.3d 502, 506.) Without the alternative possession instruction, the jury was bound to find guilt of possession for sale even if they believed that David did not intend to sell heroin but believed he merely possessed it.

Moreover, the jury could reasonably have inferred from the evidence that David possessed the heroin for his brother who was a known user. Even though David and Paul and Hortencia Marentz testified that Manuel had not been seen at the house for over a month, no evidence was adduced at trial as to the nature of Manuel's relationship with his family nor how and when he arrived at the home before the time of the arrest. Therefore, the jury could have believed that it was Manuel who stashed the heroin into the headboard, and David, knowing it was there, attempted to hide it when the officers arrived.

The possibility that David held the balloons for Manuel's use is also evidenced by the fact that some of the balloons were cut open. The laboratory analyst testified that he only tested three balloons; but in fact, five balloons were cut when the evidence was presented to the jury. Therefore, the jury could also have inferred that although balloons of heroin are normally so packaged for sale (thereby believing the testimony of Detective Nelson and Officer Waugh), the cut balloons could have been kept by Manuel for his own personal use.

Any of these inferences would have been reasonable based on the evidence at trial; however, the evidence was at least sufficient to support a finding of simple possession against David. By failing to give the simple

possession instruction, it is impossible to determine whether the jury would have concluded that David possessed the heroin without the intent to sell it. The jury may have believed it was faced with an all-or-nothing verdict, and consequently convicted on the charges.

There is another reason for holding that the trial court reversibly erred by failing to give the lesser included offense instruction. First, the jury was instructed as to simple possession as well as possession for sale with respect to the *marijuana* found in David's bedroom. The only evidence regarding David's intent to sell marijuana was based on Detective Nelson's testimony that David admitted that he "sells a little weed," and because in Nelson's opinion, the marijuana was packaged for sale. As in the case of the heroin, David denied making the statement regarding the marijuana. Therefore, the jury was faced with substantially the same evidence regarding the heroin: David's denied possession and intended sale of both narcotics; both narcotics were found in the same room; in Nelson and Waugh's opinion, the marijuana and heroin were both packaged for sale. The only difference in evidence between the two narcotics, was Nelson's testimony that David admitted selling marijuana, but denied being caught with the heroin in his hand—testimony which was viewed by the prosecution not to be a denial of the sale of heroin. Why the trial court gave the simple possession instruction as to the marijuana, if the jury could have believed David's admission, but failed to give the same instruction as to the heroin based on the same quantum and type of evidence is unclear, but constitutes harmful error.

The trial court thus committed prejudicial error in failing to instruct on simple possession of heroin when it in fact instructed on simple possession of marijuana. Since the jury could have decided the intent to sell issue either way because of the conflicting testimony, the jury should have been afforded the opportunity to consider the alternative verdict of simple possession as the jury could reasonably have found David guilty of possession of heroin, but not possession with intent to sell. Consequently, the judgment is reversed.

## II. APPELLANT WAS NOT DENIED EFFECTIVE ASSISTANCE OF COUNSEL

In his petition for writ of habeas corpus, David contends that he was denied effective assistance of counsel because (1) defense counsel failed to move for the name and whereabouts of a witness informant who served as the basis for issuance of a search warrant naming Manuel Saldana, and (2) because trial counsel elicited prejudicial hearsay testimony from the investigating detective and then failed to move for a dismissal order striking the testimony. David's contention that he was denied effective assistance of counsel is without merit.

■ A defendant is entitled to "the kind of legal assistance to be expected of a reasonably competent attorney acting as a conscientious, diligent advocate." (*People* v. *Pope* (1979) 23 Cal.3d 412, 427 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) A defendant will be denied effective assistance of counsel only where, as a consequence of acts or omissions, a reasonably meritorious defense has been withdrawn, or where a reasonably probable determination more favorable to the defendant would have resulted in the absence of counsel's inadequate performance. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 583-584 [189 Cal.Rptr. 855, 659 P.2d 1144].)

■ In *People* v. *Pope, supra,* 23 Cal.3d 412, the California Supreme Court set forth the duties of defense counsel in a criminal case. Counsel must (1) diligently and actively participate in the full and effective preparation of the client's case, and (2) must investigate carefully all defenses of law or fact that may be available. (*Id.,* at p. 425.) To prove ineffectiveness of counsel, the defendant must show that a) trial counsel failed to act in a manner expected of a reasonably competent attorney acting as a diligent advocate and b) that counsel's performance resulted in the withdrawal of a potentially meritorious defense. (*Ibid.*) While defendant need not establish that adjudication of a crucial or meritorious defense would be in his favor (*People* v. *Farley* (1979) 90 Cal.App.3d 851, 865 [153 Cal.Rptr. 695, 12 A.L.R.4th 301]), the defendant is not denied adequate assistance of counsel if the failure to make a pretrial motion is an informed decision and matter of trial tactics. (See *In re Lower* (1979) 100 Cal.App.3d 144 [161 Cal.Rptr. 24].)

A. *Defense Counsel's Failure to Move for Informant Disclosure Did Not Deny Appellant a Meritorious Defense*

■ In order for a defendant to succeed in a motion to disclose an informant, the defendant must demonstrate "a reasonable *possibility* that the informer *could* give evidence on the issue of guilt that *might* result in defendant's exoneration. This rule of evidence is founded on the principle that nondisclosure in this situation would result in a denial of a fair trial to defendant." (*People* v. *Tolliver* (1975) 53 Cal.App.3d 1036, 1043 [125 Cal.Rptr. 905].)

The informant must be a *material* witness to the issue of defendant's guilt or innocence. A "material" witness is one, who with reasonable possibility, "could give evidence bearing on defendant's guilt that might exonerate defendant of the criminal charge." (*Ibid.*) The defendant need not show that the informer *would* give favorable testimony since the defendant will not know this about an undisclosed informant. (*Ibid.*) Nor must the defendant demonstrate the informer will give the exact testimony he is expected to

give. "However, defendant's showing to obtain disclosure of an informant's identity must rise above the level of *sheer* or *unreasonable* speculation, and reach at least the low plateau of reasonable possibility." (*Id.*, at p. 1044.)

 Trial counsel's failure to move for informant disclosure would have been fruitless because the informant was not a material witness; nor was it reasonably possible that the informant could give admissible evidence on the issue of guilt or innocence which would have resulted in David's exoneration. Rather, defense counsel's failure to move for informant disclosure was a reasonable tactical decision made after counsel gave due consideration to all relevant factors.[4]

David contends that had trial counsel moved for informant disclosure, David would have been able to elicit testimony that he was not engaged in the sale or possession of heroin with his brother, Manuel. Moreover, David predicts that it was reasonably probable the informant would have exonerated David's participation by testifying that Manuel was in exclusive control and possession of the heroin balloons, and that it was Manuel who stashed the balloons in the headboard of Maria Saldana's bed.

David relies on *People* v. *Tolliver, supra,* 53 Cal.App.3d 1036, and *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412 [112 Cal.Rptr. 485], for the proposition that informant discovery is required when the defendant claims that the informer might testify that someone else was *also* in possession of narcotics found on the premises where the informant has seen both the defendant and another person in possession of heroin.

Those cases are distinguishable from the present case, however, in that the informants in *Williams* and *Tolliver* claimed to have personally seen the defendants possessing and/or selling heroin before the search. By way of contrast, in the case before us, the search warrant was issued on the basis of the informant's claim that he had seen Manuel. No mention was ever made of David. Moreover, even if the informant could testify that Manuel had possession of the heroin, possession is still imputed to David since conviction for possession of narcotics can be predicated upon a showing of nonexclusive or joint possession. (*People* v. *Hambarian* (1973) 31 Cal.App.3d 643, 659 [107 Cal.Rptr. 878].)

 An informant may not be material to the issue of guilt where he is determined to be material to the issue of probable cause underlying the

---

[4]Letter from Jack V. Engstrom, deputy public defender, to Tom Bleauvelt, deputy state public defender, July 27, 1983, attached as exhibit D to David's "Amendment to Petition for Writ of Habeas Corpus."

issuance of a search warrant. (*People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 830-831 [187 Cal.Rptr. 296].) In *People* v. *Galante* (1983) 143 Cal.App.3d 709 [192 Cal.Rptr. 184], an informant had made purchases of cocaine at the premises where defendant resided. That informant served as the basis of the search warrant. During the search, cocaine was found in a locked file cabinet in defendant's bedroom. The key to the cabinet was found in the defendant's trousers. In holding that the trial court properly denied the defendant's motion for informant disclosure, the court reasoned that since the informant had not indicated knowledge of the defendant's possession of cocaine in the locked box, his testimony could not exonerate the defendant.

■ Similarly, in the case before us, the informant allegedly purchased heroin from Manuel. That information was material to the determination of probable cause underlying the warrant issued to search for evidence of heroin sales by Manuel. David was consequently arrested for possession of heroin and marijuana with intent to sell because he happened to be in the house *at the time of the search* when narcotics were found in his bedroom, thus negating the possibility that the informant could provide information regarding David's nonpossessory status at the time of the search and arrest since the informant was not a participating eyewitness.

Several cases have addressed the issue of whether informant disclosure is required where the informer is a "nonparticipating eyewitness" to the charged offense. Such an informer is one who is not a participant or eyewitness to the issue of guilt as to the *charged* offense. In *People* v. *Hardeman, supra,* 137 Cal.App.3d 823, for example, the defendant was charged with constructive possession of PCP found in the area underneath defendant's house during execution of a search warrant which was later suppressed. The informant had seen the defendant alone selling PCP eight days earlier. The defendant wanted identification of the informant in the hope he would testify to the possibility of a joint sale operation. The court reasoned that the possibility such an informant can give exonerating testimony becomes more speculative as the degree of attenuation between the "relative proximity of the informant to the offense charged" decreases. (*Id.,* at p. 828.) The court held that the defendant was not entitled to informant disclosure because the informant could not provide information regarding the defendant's "possessory status of PCP at the time of the search and arrest." (*Id.,* at p. 829.)

In the present case, defense counsel determined that a motion for informant disclosure would be futile because he knew that since Manuel was not a resident of the house, he was not authorized to be there. As a result, counsel predicted (accurately) that the People would argue the contraband

was in joint possession of Manuel and David. Further, since the informant could not testify that David was *not* in control of the contraband at the time of the search, and because David was not named in the search warrant, defense counsel determined a motion for disclosure would be fruitless. (Amend. to petn. for writ of habeas corpus, exh. D.)

In sum, defense counsel knew exactly what he was doing. Consequently, defendant was not denied effective assistance of counsel for failure to make a futile pretrial motion. (*People* v. *Shope* (1982) 128 Cal.App.3d 816 [180 Cal.Rptr. 567].) "It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People* v. *Shelburne* (1980) 104 Cal.App.3d 737, 744 [163 Cal.Rptr. 767].)

B. *Defense Counsel's Failure to Move for Mistrial or Order Striking Prejudicial Hearsay Testimony Did Not Deny Appellant Effective Assistance of Counsel*

 David's second claim is that when inadmissible and prejudicial hearsay testimony was elicited from Detective Nelson to the effect that he heard that David sold heroin,[5] he was denied effective assistance of counsel because counsel failed to move for a mistrial or order striking or limiting the testimony. Again, David's claim is without merit. (See *People* v. *Perry* (1979) 100 Cal.App.3d 251, 265 [161 Cal.Rptr. 108] [failure to object to inadmissible hearsay evidence held not ineffective assistance of counsel].)

In *People* v. *Frausto* (1982) 135 Cal.App.3d 129 [185 Cal.Rptr. 314], the court noted that it is the burden of a defendant to show affirmatively that the omission of defense counsel involved a crucial issue and that the omission cannot be explained on the basis of any knowledgeable choice of facts. Moreover, even if counsel failed to object, assuming that such failure was tactical, "merely tactical errors" are not reversible, because counsel's decisions during trial cannot be second-guessed by the hindsight of a reviewing court. (*Id.*, at p. 139.)

Detective Nelson's answer could have been an unpredictable response to the open-ended question as phrased. When defense counsel later asked De-

---

[5]In the instant case, the following colloquy took place:
"Q. Now, what did you say to David when you confronted him with the balloons?
"A. I told him, 'That's what you put in there, wasn't it?'
"Q. *Anything else?*
"A. I discussed several things. I told him that I had been told he was selling heroin by several persons." (Italics added.)

tective Nelson whether David had denied the statement that he sold heroin, Detective Nelson again responded in part, "I had said that several persons had told me that he was selling heroin," the answer simply did not naturally flow from the question as phrased by defense counsel. Consequently, defense counsel should not be held to have been ineffective merely because an unpredictable or unintended answer was given.

With regard to David's further contention that his counsel should have moved to limit the evidence or for an order striking the testimony, it is reasonably likely that counsel's purpose in failing to do so was tactical. That is to say, such a motion could only have served to call the jury's attention to the statement which defense counsel wished them to ignore.

More importantly, however, defense counsel did object to the prosecution's pretrial motion for an order prohibiting the defense from bringing out the search warrant naming Manuel but not David. That motion was granted. During the trial, the prejudicial statement elicited from Detective Nelson came before the jury. On the following day, in chambers, defense counsel requested a rehearing on the issue of the search warrant. That request was denied. This indicates that defense counsel was acutely aware of what he was doing, even if it was strategically *defective*.

With regard to the prejudicial effect of the hearsay statement, there was sufficient evidence, although circumstantial and contradictory, for the jury to reasonably conclude that David possessed heroin with intent to sell at the time the police served the search warrant. Detective Nelson's statement to the effect that a person or persons unnamed had told him that David was selling heroin could hardly have been of major consequence. Under the circumstances, since it is not reasonably probable that a determination more favorable to David would have resulted in the absence of the claimed failings of trial counsel, David's petition for writ of habeas corpus on the basis of ineffective assistance of counsel is denied by this court.

## CONCLUSION

The trial court erred by failing to instruct *sua sponte* on possession of heroin. Given the evidence in this case, the jury could have found that David possessed the heroin but without the intent to sell it. The error was prejudicial within the meaning of *People* v. *Sedeno, supra,* 10 Cal.3d 703, because no other instruction presented the jury with an alternative theory of simple possession without the intent to sell. The remedy for this error is a new trial, however, we would entertain a motion to modify the judgment by reducing the conviction of count I from possession for sale to simple

possession upon a petition for rehearing by the respondent. (See *People* v. *Heslen* (1946) 27 Cal.2d 520, 521 [165 P.2d 250]; Pen. Code, § 1260.)

David was not denied effective assistance of counsel when counsel determined, after full consideration of all factors, that it would be futile to move for informant disclosure. Consequently, David was not denied adjudication of a meritorious defense.

Furthermore, counsel's failure to move for an order striking or limiting hearsay testimony was not ineffective counsel. Although possibly a tactical error, it was not prejudicial, since sufficient evidence was available from which the jury could have found guilt or innocence.

Accordingly, the judgment is reversed as to count I only (possession of heroin for sale, Health & Saf. Code, § 11351) and the matter remanded for further proceedings. In all other respects, the judgment is affirmed. The petition for writ of habeas corpus is denied.

Thompson, Acting P. J., and Johnson, J., concurred.