Filed 3/25/14  P. v. Richards CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048289 |
| v. | (Super. Ct. No. 10WF0652) |
| RANDY RAY RICHARDS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed as modified.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sharon Rhodes and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Randy Ray Richards of 10 counts, arising out of four separate incidents, in late 2009 and early 2010: (1) possession for sale of methamphetamine (Health & Saf. Code, § 11378);[1] (2) transportation of methamphetamine (§ 11379, subd. (a)); (3) possession of a controlled substance with a firearm (§ 11370.1, subd. (a)); (4) possession of a firearm by a precluded person (Pen. Code, § 12021, subd. (a)(1)); (5) possession for sale of methamphetamine (§ 11378); (6) transportation of methamphetamine (§ 11379, subd. (a)); (7) receiving stolen property (Pen. Code, § 496, subd. (a)); (8) possession of methamphetamine (§ 11377);[2] (9) possession of a controlled substance with a firearm (§ 11370.1, subd. (a)); and (10) possession of a firearm by a precluded person (Pen. Code, § 12021, subd. (a)(1)). Taking into account these convictions, as well as true findings by the jury with regard to firearm and drug enhancements and true findings by the court with regard to prior convictions, the court sentenced defendant to 10 years four months in prison.

Defendant challenges the sufficiency of the evidence with regard to his convictions. Defendant also claims the court erred by refusing to admit evidence of out-of-court utterances by a companion during two of his arrests. We reject these contentions. But we modify the judgment to reduce defendant's restitution fine and parole revocation fine from $280 to $200. As conceded by the Attorney General, the court intended to impose the statutory minimum but was misinformed as to the minimum fine amount pursuant to the applicable version of Penal Code section 1202.4, subdivision (b), which was amended between the time of defendant's offenses and his sentence.

---

[1] All statutory references are to the Health and Safety Code, unless otherwise stated.

[2] On this count, the jury acquitted defendant of the charged offense, possession for sale (§ 11378), and convicted defendant of the lesser included offense.

2

FACTS

Nine witnesses testified at trial, most of them law enforcement officers. Defense counsel did not call any witnesses; defendant did not testify. It was stipulated that at all relevant times, defendant was a person legally prohibited from possessing a firearm. It was also stipulated that the white crystalline substance recovered by the police in each of the incidents described below was methamphetamine.

*October 29, 2009 — Counts 1, 2, 3, and 4*

At 11:49 p.m., a police officer stopped a silver Volkswagen Jetta in Huntington Beach, California. There were two occupants in the vehicle, defendant (who was driving) and a female named Samantha Orloff (who was sitting in the passenger seat). Defendant was nervous; his voice was trembling and sweat flowed down his forehead. In conducting a pat down search of defendant, the officer found over $2,000 in defendant's pocket. A bag in the trunk contained over $3,000 in currency. Another black leather bag in the trunk contained items with defendant's name and a small camera case with a loaded firearm. Three objects in the bag held methamphetamine, 4.9 grams in all. Still searching in the trunk, the officer found a digital scale (with methamphetamine residue on the weighing platform) and empty plastic baggies. Four cellular telephones were in the glove compartment. Based on their expertise and knowledge of the aforesaid facts, two officers opined that defendant possessed the methamphetamine for the purpose of sale.

*November 18, 2009 — Count 7*

Defendant was at an electronics store with a female companion at approximately 6:30 p.m. The female had three or four items in her hand, including a keyboard. She ran out of the store. Defendant casually walked out of the store. The

3

female continued walking away from the store and got into the passenger side of a silver Volkswagen. There was a male driver. The car drove away.

At 6:35 p.m., police officers on patrol received a call concerning a theft at the electronics store. The officers spotted the silver Volkswagen that was identified by the dispatcher. The officers stopped the car. Defendant was the driver and Samantha Orloff was the passenger. A search of the vehicle yielded a light, a keyboard, a digital camera, a wireless jack, and a "wifi finder" key chain. These items were stolen from the electronics store.

*January 22, 2010 — Counts 5 and 6*

Huntington Beach police had a motel room under surveillance beginning in the mid-afternoon based on suspected narcotics activity. Defendant walked out of the room. The motel room was subsequently searched, whereupon it was discovered that Orloff was in the room. There was paperwork in the room with defendant's and Orloff's names. The search disclosed three Altoid mint containers with, respectively, 1 gram, .3 grams, and .2 grams of methamphetamine The search also uncovered a thermos with 3.3 grams of methamphetamine and a methamphetamine pipe with methamphetamine residue.

Defendant drove in a Volkswagen to a residence on Indianapolis Avenue and entered using a key to unlock the door. Defendant stayed inside for a few minutes. Defendant carried a black bag both on his way in to the Indianapolis residence and on his way back to his vehicle. The residence was ultimately searched by police. A female named Leslie Zahedimotlagh was inside the residence. One of the two bedrooms in the residence had men's items (cologne, men's pants and shirt). A letter addressed to defendant was in this bedroom as well. The search of that bedroom also uncovered two scales, small plastic bags in a larger plastic container, and a metal utility box with 72.2

grams of methamphetamine separated into three bags. In the testifying officer's opinion, the methamphetamine was possessed for purposes of sale.

Police officers stopped the silver Volkswagen Jetta driven by defendant. Defendant was the sole occupant in the vehicle. One officer opined defendant was under the influence of a controlled substance, possibly a central nervous system stimulant (such as methamphetamine) and an opiate. A search of the vehicle disclosed a sunglass case under the hood of the car, containing four baggies with (in total) 14.2 grams of methamphetamine. A methamphetamine pipe was found under the front passenger seat and $2,681 was found in a leather bag in the trunk. Small empty plastic baggies were also found in the leather bag. The testifying officer opined that the methamphetamine was possessed for the purpose of sale. "When you're talking to people that use illicit drugs, I have talked to well over a hundred of them, less than a tenth of a gram can be used for use of methamphetamine. [¶] So to find somebody that has 14 grams, that in and of itself is one" factor supporting his opinion. It is possible that a heavy user could use up to half a gram of methamphetamine per day.

*February 12, 2010 — Counts 8, 9, and 10*

Police officers entered a motel room in Westminster to perform a probation search on an individual named Jessica Lau, who was believed to be staying in this room. Defendant was seated at the foot of the bed. A female, Ashley Griggs, was also in the motel room; no one else was present. A plastic tote bag in the room contained a loaded handgun and two prescription bottles containing 1.6 grams of methamphetamine. The tote bag also contained men's clothing. Hypodermic needles were found under the bed, methamphetamine pipes were found on the dresser along the wall, and two scales were found in the dresser drawer. The testifying officer opined that the items found were possessed for the purpose of selling a controlled substance.

5

DISCUSSION

*Admissibility of Orloff's Out-of-Court Statements*[3]

Before trial, defendant advocated for the admission of two out-of-court statements by Orloff. The first occurred during the October 29, 2009 arrest of defendant. Defendant asked why he was being arrested. The officer responded that it was because defendant was "a felon in possession of a firearm." Orloff interjected, "That is my gun." Orloff had not mentioned the gun while the search was being conducted. The officer subsequently questioned Orloff about the gun. Orloff was able to identify the make of the gun but not the caliber. Orloff said she had purchased the gun at an antique shop nine years earlier, but she could not provide any specific information about the purchase. Orloff said the gun was not registered.

The court found "there is not sufficient evidence to lay the foundation for a spontaneous utterance. I don't think that there is evidence to show that there was any excitement or that it even narrates or explains an act, so that motion is denied." The court also rejected defense counsel's argument that this statement could be admissible "for its effect on the listener." The court thought the effect on the arresting officer was irrelevant, but noted the issue could be raised again at trial.

The second out-of-court statement was made by Orloff on November 18, 2009. As she was being arrested, Orloff stated defendant "had nothing to do with it, it was all me and I only did it for my kids." Defense counsel claimed this utterance was admissible "for its effect on the listener." The court rejected the admissibility of this statement as well, referencing its prior ruling on the gun statement and noting that "if it becomes relevant later" this issue could be raised again.

---

[3]      Orloff did not testify at trial.

The hearsay rule generally prohibits the admission of out-of-court statements "to prove the truth of the matter stated." (Evid. Code, § 1200.) Here, defendant sought to introduce Orloff's out-of-court statements, presumably for their truth (i.e., it was Orloff's gun during the October 2009 incident and defendant had nothing to do with the theft of electronics in the November 2009 incident).

Defendant contended (at least with regard to the gun statement) that these statements fell within the spontaneous declaration exception to the hearsay rule. "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) "'"To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." [Citations.]' [Citation.] 'Whether the requirements of the spontaneous statement exception are satisfied in any given case is, in general, largely a question of fact. [Citation.] The determination of the question is vested in the court, not the jury. [Citation.] In performing this task, the court "necessarily [exercises] some element of discretion . . . .'""" (*People v. Thomas* (2011) 51 Cal.4th 449, 495.)

The court acted within its discretion by ruling Orloff's statements were not spontaneous declarations. Prior to and during both arrests, Orloff had time to prepare a lie to protect defendant, if that is indeed what she was doing. Orloff's statements did not narrate, describe, or explain something that was occurring; instead, her statements purported to accept responsibility for criminal conduct that had already occurred.

7

Contrary to defendant's assertions in his briefs, the application of the hearsay rule in these circumstances does not violate defendant's constitutional right to a fair trial.

Defendant sensibly abandons his trial attorney's argument that Orloff's statements were admissible for the purpose of proving their effect upon the listener (i.e., the police officers to whom she was speaking) rather than for their truth. We fail to understand how the effect of Orloff's statements on the police officers was in any way relevant to the issues at trial.

*Sufficiency of the Evidence*

Defendant next challenges the sufficiency of the evidence with regard to each of his 10 convictions. In reviewing the record for substantial evidence, our role is limited to asking "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Holt* (1997) 15 Cal.4th 619, 667.) "We draw all reasonable inferences in support of the judgment." (*People v. Wader* (1993) 5 Cal.4th 610, 640.)

In this section of his brief, defendant succeeds in highlighting evidence that is not in the record. There is no evidence defendant owned the Volkswagen he drove in three of the four incidents. As to the January 10, 2010 incident, there is no evidence suggesting the motel room was registered to defendant or that the residence was owned or leased by defendant. The motel room in the February 12, 2010 incident was linked to Lau, not defendant. There is no direct evidence of defendant's actual knowledge as to the contents of the trunk of the Volkswagen, the motel rooms, or the residence during the several incidents. There is no DNA or fingerprint evidence. There is no evidence defendant assisted Orloff inside the electronics store or that defendant ran to the Volkswagen after Orloff shoplifted the items. There is no evidence that the methamphetamine or firearms were found on defendant's person in any of the incidents.

8

There is no direct evidence of defendant actually selling methamphetamine to another person. There is no evidence tying defendant to cell phones recovered in the searches. There was almost always another person present at each of the incidents to whom blame could be shifted (Orloff, Zahedimotlagh, Griggs). In sum, defendant contends there was insufficient evidence for the jury to find beyond a reasonable doubt that defendant possessed the methamphetamine or the guns, or participated in any way in Orloff's theft from the electronics store.

Unstated in plaintiff's briefs, but underlying his position, is the notion that something more than circumstantial evidence is required for a jury to convict him. This is not the law. "In a case built solely on circumstantial evidence, none of the individual pieces of evidence 'alone' is sufficient to convict. The sufficiency of the individual components, however, is not the test on appeal. Rather, in reviewing an attack on the sufficiency of the evidence, we need only determine whether a reasonable trier of fact, considering the circumstantial evidence cumulatively, could have found the defendant guilty . . . ." (*People v. Daya* (1994) 29 Cal.App.4th 697, 708-709.)

There was ample circumstantial evidence to convict defendant of each offense. As to the October 29 incident, defendant was driving a car in which methamphetamine and a firearm were hidden. When defendant was detained, an officer found $2,000 in cash on defendant's person. As to the November 18 incident, defendant was both seen inside the electronics store with Orloff and found to be the driver of the vehicle in which Orloff fled the electronics store. As to the January 22 incident, defendant was found (this time alone) in the same Volkswagen, again with secreted methamphetamine. Defendant had previously been inside a motel room and a residence in which greater amounts of methamphetamine and other indicia of drug distribution were found. As to the February 12 incident, defendant was the only male found in a motel room where a bag with male clothing was found, inside of which was more methamphetamine and a handgun. Scattered throughout these incidents were plastic

9

baggies used for drugs, scales used to measure drug quantities, and unusually large amounts of cash. Police officers testified, as to each of the methamphetamine incidents, that defendant possessed the controlled substances for the purposes of sale. (See *People v. Saldana* (1984) 157 Cal.App.3d 443, 455-456 [officer's opinion is circumstantial evidence of defendant's intent to sell].) Taken collectively, the incidents establish a modus operandi with regard to defendant's possession and transportation of drugs and show defendant was not simply in the wrong place (or vehicle) at the wrong time. Based on all the evidence in the record, the jury could reasonably conclude defendant was guilty beyond a reasonable doubt of each offense

## DISPOSITION

The judgment is modified to reduce defendant's restitution fine and matching parole revocation fine from $280 to $200. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is affirmed as modified.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.

10