Filed 11/24/20  P. v. Aguirre CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MANNY DANIEL AGUIRRE,<br><br>Defendant and Appellant. | B302007<br><br>(Los Angeles County<br> Super. Ct. No. BA457395) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  William N. Sterling, Judge.  Affirmed and remanded with directions.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Deputy Attorney General, Jaime L. Fuster and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Manny Daniel Aguirre was convicted of second degree murder and being a felon in possession of a firearm and sentenced to 40 years to life in prison. The sole issue presented is whether defendant's trial counsel was ineffective for failing to move for the suppression of his pretrial statement to an undercover agent.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with one count of murder (Pen. Code, § 187, subd. (a); count 1) and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 3). (Due to pleading errors, the original count 2 possession charge was realleged as count 3 and count 2 was dismissed.) Firearm use allegations were alleged in connection with count 1 (§ 12022.53, subds. (b)-(d)). A 2013 conviction for attempted first degree burglary was alleged as a strike prior and as a prior serious felony (§ 667, subds. (a)(1), (b)-(j), § 1170.12).

The charges arose from the fatal shooting of defendant's brother-in-law after a quarrel at the family home. Defendant lived with his wife, America, in the front house of a duplex with their four children. America's two brothers, Francisco and Abraham, and her parents lived in the back house. (Because of the common surname, we refer to the brothers by their first names for clarity.)

On the evening of April 10, 2017, defendant got into a loud verbal argument with Francisco and Abraham. They were cursing and calling each other names. The three men walked down the sidewalk away from the family home, still arguing. Moments later, America heard a loud popping sound. She walked down the street a short distance and found Francisco lying on his

2

back, bleeding. Paramedics arrived and attempted to treat Francisco but he was pronounced dead that evening.

Defendant never returned home after this. Defendant was on parole and had been wearing an ankle monitor, which was cut off that evening. It was later determined defendant had fled to his father's home in Mexico. Defendant's sister arranged for their father to have defendant turn himself in, and he was picked up and taken into custody at the border on April 13, 2017.

On May 9, 2017, defendant was placed in a cell with an undercover agent posing as a fellow detainee. Their conversation was recorded. Defendant told the undercover agent he had been arrested for a parole violation. A deputy interrupted the conversation and told defendant he was going to be interviewed by a homicide detective from the sheriff's department. The deputy said "you're getting charged with fucking murder, dude."

After the deputy walked away, the undercover agent said, "they fucking just charged you with murder" and asked if defendant knew he was going to be charged with murder. Defendant responded, "I kinda knew . . . but, like, they don't really have nothing on me." Defendant and the undercover agent continued talking, and defendant said the incident occurred a month earlier, he had a cell phone with him at the time but had gotten rid of it, there was "[j]ust personal shit—some fool just fucking getting on my nerves," and he had asked someone to get rid of the handgun because he had "just smoked this fool." Defendant also said it happened on the street right by his home. Later in the conversation, defendant responded to a question from the undercover agent about whether the other person had pulled anything on him, saying "[h]e didn't have nothing, fool. He was just fucking running his mouth."

A felony complaint was filed over a week later on May 17, 2017. Trial by jury was in January 2019. Defendant's recorded statement to the undercover agent was played for the jury. Defendant testified in his own defense and said Francisco was shot accidentally. He said Francisco pulled the gun on him and while they wrestled over it, the gun went off. Defendant said he fled and asked someone to get rid of the gun for him because he was scared.

The jury found defendant guilty of second degree murder, of being a felon in possession of a firearm, and found true the firearm use allegations. In a bifurcated bench trial, defendant admitted his 2013 conviction for attempted first degree burglary.

At the sentencing hearing, the court denied defendant's motion for new trial. The court struck defendant's 2013 conviction for purposes of the "Three Strikes" law and as a prior serious felony pursuant to Penal Code section 667, subdivision (a)(1), stating that 40 years was a fair sentence and defendant should have the opportunity to earn parole. The court sentenced defendant to prison for a term of 40 years to life calculated as follows: 15 years to life on count 1 (second degree murder), plus a consecutive term of 25 years to life for the firearm use (§ 12022.53, subd. (d)); and a concurrent three-year high term on count 3 (possession of firearm). The court imposed and stayed sentence on the firearm use enhancements pursuant to section 12022.53, subdivisions (b) and (c). The court awarded defendant 923 actual days of presentence custody credits. The court imposed various fines and fees and ordered victim restitution in the amount of $9,070.

This appeal followed.

## DISCUSSION

Defendant contends his appointed trial counsel was ineffective for failing to seek the suppression of his pretrial statement to the undercover agent because it violated his Sixth Amendment right to counsel. The contention lacks merit.

In *Illinois v. Perkins* (1990) 496 U.S. 292, 296 (*Perkins*), the Supreme Court rejected the defendant's argument that the Fifth Amendment and *Miranda v. Arizona* (1966) 384 U.S. 436 required the suppression of his jailhouse statement to an undercover agent. The court held that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*," explaining that the "essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate." (*Perkins,* at p. 296.)

*Perkins* further concluded that because no charges had been filed against the defendant relating to the subject of his conversation with the undercover agent before they spoke, there was no Sixth Amendment violation of the right to counsel. (*Perkins, supra,* 496 U.S. at p. 299.) Citing *Massiah v. United States* (1964) 377 U.S. 201 and its progeny, *Perkins* reiterated it is only "[a]fter charges have been filed, [that] the Sixth Amendment prevents the government from interfering with the accused's right to counsel." (*Perkins,* at p. 299.)

Defendant concedes no charges were filed against him for the murder of Francisco when he spoke to the undercover agent. Defendant's statement to the undercover agent was on May 9, 2017, and charges were not filed against defendant until more than a week later on May 17, 2017. Defendant nonetheless argues we should find his right to counsel attached on May 9

5

when a deputy interrupted his conversation with the jailhouse informant to say he would be charged with murder. Defendant contends the deputy's statement and the undercover agent's response that "they . . . just charged you with murder" should be treated as the functional equivalent of the formal filing of charges. He cites no authority for this novel expansion of the law.

At oral argument, defendant focused on this functional equivalence argument, again without citation to authority. As we explain, there is no legal merit to the argument. But the argument is also weak factually. The deputy that interrupted defendant's conversation with the undercover agent told defendant he was *going to be* charged with murder and was therefore going to be speaking with a homicide detective. He did *not* say defendant had been charged. Then, after the deputy walked away, the undercover agent, who defendant believed to be a fellow inmate, said "they fucking just charged you with murder." The impact on defendant of such a statement being made by someone he believed was a fellow inmate is entirely different than if it had come from a person of authority. Defendant made his statements freely and was not under the compulsion of a police-dominated interrogation.

"The Sixth Amendment right to counsel 'does not attach until a prosecution is commenced, that is, " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " ' [Citations.] It is not enough, for example, that the defendant has become the focus of the underlying criminal investigation." (*People v. Clair* (1992) 2 Cal.4th 629, 657.) This bright-line rule serves the purpose of

the Sixth Amendment right to counsel which "becomes applicable *only when the government's role shifts from investigation to accusation.* For it is only then that the assistance of one versed in the 'intricacies . . . of law,' [citation], is needed to assure that the prosecution's case encounters 'the crucible of meaningful adversarial testing.' " (*Moran v. Burbine* (1986) 475 U.S. 412, 430, italics added.)

In order to prevail on his ineffective assistance claim, defendant had to demonstrate "both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.) " ' "Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." ' " (*People v. Lucas* (1995) 12 Cal.4th 415, 437.)

Defendant has not shown there is any merit to his claim his pretrial statement should have been suppressed. "It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Shelburne* (1980) 104 Cal.App.3d 737, 744; accord, *People v. Saldana* (1984) 157 Cal.App.3d 443, 462.) His ineffective assistance claim thus fails.

Finally, in reviewing the record, we find the abstract of judgment contains a typographical error that must be corrected. The abstract states that sentences were imposed and stayed

pursuant to Penal Code section 12022.53, subdivisions (c) and (d), when the stayed terms were pursuant to section 12022.53, subdivisions (b) and (c). On remand, a corrected abstract of judgment must be prepared and transmitted to the Department of Corrections and Rehabilitation.

## DISPOSITION

The judgment of conviction is affirmed.

On remand, the superior court is directed to prepare a new abstract of judgment that correctly records the court's oral pronouncement of judgment as to the firearm use enhancements on count 1, i.e., imposing a 25-years-to-life sentence pursuant to Penal Code section 12022.53, subdivision (d), and imposing and staying sentence under section 12022.53, subdivisions (b) and (c). The court is further directed to transmit the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


WILEY, J.

8