Filed 11/22/13  P. v. Maeshack CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE, | B245582 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA383749) |
| v. | |
| ANTRELL DWAYNE MAESHACK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jose I. Sandoval and Laura F. Priver, Judges.  Affirmed.

Brandie Devall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Eric E. Reynolds and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Antrell Maeshack appeals from the judgment entered following a jury trial in which he was convicted of possessing methamphetamine and marijuana for sale. Defendant contends that the evidence was insufficient to support his conviction for possession of marijuana for sale, and the trial court erred by denying his motion for discovery pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and refusing to instruct on simple possession as a lesser included offense. We affirm.

## BACKGROUND

About 3:00 p.m. on April 3, 2011, Deputy Jesus Urrutia saw defendant and another man sitting in a car illegally parked in the alley just south of 103rd Street in Los Angeles. Urrutia spoke to defendant, who said he lived in the house in front of the alley with his wife and children and was just "hanging out." Urrutia discovered that defendant was "subject to search and seizure conditions." (In fact, defendant was on parole, but the trial court exercised great care to attempt to prevent the jury from learning defendant's status.) Urrutia's partner searched defendant and recovered two mobile phones, $1,345 in cash, and a set of keys to the house in question. There were additional phones on the dashboard or center console of the car, but there was no evidence of who owned them. The car was registered to Leticia Maddox.

Urrutia called for additional deputies to help search the house. Before they began searching, defendant told the deputies "he had a large amount of weed and he had some ecstasy pills." Although the house was unlocked, Urrutia tried the keys recovered from defendant and found that one key worked the lock. Defendant accompanied the deputies and directed them to one of four small seats resting beneath the living room coffee table. Urrutia pulled the seat out and opened it up, revealing a large ziplock freezer bag measuring at least 12 inches by 12 inches. Inside that bag were eight sandwich-sized baggies of marijuana and a larger baggie measuring approximately 12 inches by 6 inches containing two sections, each of which contained marijuana. The deputies also found inside the seat a large plastic bag containing 176 tablets that appeared to Urrutia to be ecstasy. They also found a box of unused sandwich-sized baggies "in the vicinity." In

2

the same room, next to the television, the deputies saw a monitor for a surveillance camera that was mounted in the kitchen window and focused upon the back porch and a gate that led to the alley. Defendant led the deputies to a safe in one of the bedrooms and opened the safe for them. Inside was $500, all in $20 bills. The deputies found no marijuana paraphernalia in the house or on defendant's person. They also found no scales and no "pay and owe sheets."

Defendant was arrested and, after being advised of and waiving his rights to silence and counsel, told the deputies that he had been selling the drugs they found because he was unemployed, had children, and had to pay the rent. Defendant wrote and signed a statement admitting that "'[w]hat the deputies found was'" defendant's "'weed and pills.'" Defendant further admitted that he had been staying at the home of his "'baby's mama . . . on 103rd'" for about six months.

The deputies were going to seize all of the cash, but they acceded to defendant's request to leave $1,000 to allow his wife, who was not present, to pay the rent and the car loan.

A sheriff's department chemist who tested the substances found in the house testified that the leafy material was marijuana and the tablets contained methamphetamine.

Urrutia also testified as an expert witness and opined that the marijuana and methamphetamine were possessed for the purpose of sale, based upon the "large amount" of marijuana, the high quality and street value of the marijuana, the individually packaged baggies of marijuana, the box of unused baggies, the absence of any marijuana paraphernalia on defendant or in the house, the "very large amount" of tablets containing methamphetamine, the large quantity of cash defendant was carrying, defendant's possession of two mobile phones, and defendant's admission that he was selling these drugs.

Sergio Sandoval, who "supervise[d]" defendant regarding his "search and seizure conditions," testified that about four times in February and March of 2011 he had met

3

with defendant at the house the deputies searched. Defendant told Sandoval that he lived in that house. On at least one of these occasions, Leticia Maddox was present. Sandoval noticed the surveillance system and told defendant he should get rid of it because it would cause law enforcement officers to accuse him of dealing drugs. Sandoval further testified that Maddox had phoned him several times to complain about defendant "hanging out, creating issues for her."

Maddox testified that defendant was the father of her three children, but they had broken up by the time she purchased the house on 103rd Street. Maddox denied that defendant ever lived in the house or had a key to it. She did not know how defendant got inside her house the day he was arrested. Defendant also did not have the combination for the safe, but Maddox left it unlocked the night before defendant was arrested. She had spoken to Sandoval on the phone, but had never met him at her house. Maddox further testified that she possessed all of the drugs seized for her personal use. She smoked marijuana daily and used the "ecstasy" for weight loss. She purchased rolling papers daily instead of keeping a supply of them around. Although Maddox generally kept the bag containing the drugs in her safe, on the night before defendant was arrested she stashed it beneath her sofa. The bag of drugs was not inside one of the little stools beneath the coffee table. Maddox explained she put up the surveillance camera so that she could more conveniently keep watch on her children, who sometimes played in the alley. She did not find the $1,000 the deputies claimed to leave in her house, but the $500 she had in her safe was missing after the deputies were in her house.

The jury convicted defendant of possessing methamphetamine for sale (Health & Saf. Code, § 11378) and possessing marijuana for sale (Health & Saf. Code, § 11359). After defendant waived a jury trial on enhancement allegations, the court found he had one prior serious or violent felony conviction within the scope of the "Three Strikes" law and had served two prior prison terms within the scope of Penal Code section 667.5, subdivision (b). The court sentenced defendant to a second strike term of 32 months in

4

prison for possessing methamphetamine for sale and 16 months for possessing marijuana for sale.

## DISCUSSION

**1.     Sufficiency of evidence**

Defendant contends the evidence was insufficient to support his conviction for possession of marijuana for sale.  He challenges only the element of intent to sell, arguing he possessed less than eight ounces of marijuana, that amount "was too miniscule to sustain a guilty finding," and he "in fact had a medical marijuana card—which supports the argument that the marijuana was for personal use."  He does not challenge the sufficiency of the evidence supporting his conviction for possessing methamphetamine for sale.

To resolve this issue, we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt.  (*People v. Tully* (2012) 54 Cal.4th 952, 1006.)  Substantial evidence is """"evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."""" (*Ibid*.)  We presume the existence of every fact supporting the judgment that the jury could reasonably deduce from the evidence and make all reasonable inferences that support the judgment.  (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Catlin* (2001) 26 Cal.4th 81, 139.)

Initially, we note that defendant's contention is based upon facts that were not introduced at trial, which we do not consider in assessing the sufficiency of evidence.  At trial, the sole evidence regarding the amount or weight of the marijuana was photographs of it and statements by Urrutia and defendant (as related by Urrutia) describing it as "a large amount."  The chemist testified that it was, in fact, marijuana, but did not testify regarding how much marijuana was in the bag.  No evidence that defendant had a medical marijuana card or was a medical marijuana user was introduced at trial.  Defendant asked Urrutia on cross-examination whether defendant said he had a medical marijuana card,

5

Urrutia replied, "No." A copy of a medical marijuana card was attached as an exhibit to defendant's motion for a new trial, but was not introduced at trial.

Substantial evidence supported defendant's conviction. The marijuana was stored in a large bag, a portion of it loose, and the rest packaged in eight smaller, sandwich-sized baggies. A box of sandwich-sized baggies was found with it. Defendant did not have any smoking paraphernalia on his person and the deputies found none inside the house. Defendant was carrying a large quantity of cash, and more cash was found in the safe inside the house. Defendant admitted that he possessed both the marijuana and the tablets for sale. Finally, Urrutia opined, based on the foregoing matters, that defendant possessed the marijuana for sale.

## 2.      Refusal to instruct on possession as lesser included offense

When discussing the jury instructions with counsel, the trial court stated it had intended to instruct on possession of the drugs as lesser included offenses of the possession for sale charges, but decided that simple possession was not a lesser included offense because the defense was that the drugs belonged to Maddox. The court viewed simple possession as "a necessarily lesser related" offense, but declared it would not instruct on any lesser related offenses.

Defendant contends that the trial court erred by refusing to instruct on possession of marijuana and methamphetamine as lesser included offenses of possessing marijuana and methamphetamine for sale. He argues the "small amount of marijuana," his possession of a medical marijuana card, and the absence of scales, pay-owe sheets, and direct evidence of a sale all supported instruction on simple possession.

An offense is necessarily included in another if either the statutory elements of the greater offense or the facts alleged in the accusatory pleading include all of the elements of the lesser offense, so that the greater offense cannot be committed without also committing the lesser. (*People v. Birks* (1998) 19 Cal.4th 108, 117.) The nature of the defense is irrelevant to the determination of whether an offense is necessarily included in a charged offense.

Possession of a controlled substance is necessarily included in a charge of possessing the same controlled substance for the purpose of sale. (*People v. Saldana* (1984) 157 Cal.App.3d 443, 456–457.)

A trial court must instruct sua sponte on a lesser included offense if there is substantial evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser. (*People v. Blair* (2005) 36 Cal.4th 686, 745.) Substantial evidence in this context is "evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist." (*Ibid.*) The substantial evidence requirement is not satisfied by any evidence, no matter how weak. (*People v. Avila* (2009) 46 Cal.4th 680, 705.) The prejudicial effect of an erroneous failure or refusal to instruct on a lesser included offense is analyzed pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Moye* (2009) 47 Cal.4th 537, 541.)

Here, notwithstanding Maddox's testimony, simple possession was a lesser included offense of the charge of possessing marijuana for sale. Maddox testified that *she* possessed the marijuana the deputies found in the house. A properly instructed jury might have disbelieved Maddox about defendant not living in her house, yet believed that she possessed the same marijuana the deputies seized for her own personal use, and defendant constructively possessed it because it was inside the living room of his residence. The jury could further believe that defendant confessed to possessing it for sale to protect Maddox. Accordingly, the trial court should have instructed upon simple possession of the marijuana as a lesser included offense. Nevertheless—given the strength of the evidence showing an intent to sell the marijuana, especially the individually filled baggies, the box of baggies found with the bag of marijuana, the absence of any smoking paraphernalia on defendant's person or in the house, and defendant's admission that he possessed it for sale—it is not reasonably probable that the jury would have convicted defendant of simple possession if it had been instructed on the

7

lesser offense. As noted, there was no evidence that defendant had a medical marijuana card or that he was a medical marijuana user.

Similarly, although the sheer quantity of methamphetamine tablets strongly suggested they were possessed for sale, the trial court should have instructed the jury on simple possession, based on Maddox's testimony that she possessed the tablets for her personal use. In contrast with the marijuana, no paraphernalia would be necessary to consume the tablets and none of the tablets were individually wrapped or packaged. But given the very large quantity of tablets and defendant's admission that he possessed them for sale, we conclude the trial court's failure to instruct on the lesser included offense was harmless.

## 3.     Denial of *Pitchess* motion

Before trial, defendant filed a motion to obtain discovery of personnel records and complaints against Deputies Urrutia and Lanska pertaining to lack of credibility; falsifying reports; acts of moral turpitude; illegal detentions, searches, and seizures; prior employment by other law enforcement agencies; investigations of the deputies' conduct and any resulting discipline in this case; and "*Brady* material." Counsel's declaration in support of the motion recounted matters set forth in the "report written by Officer Lanska," including that defendant said he was on parole and gave the deputies permission to search his residence, defendant told the deputies that he had a large amount of marijuana and ecstasy in the living room and directed them to the drugs, and defendant waived his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602], and admitted ownership of the drugs. The declaration then stated, "I am informed and believe that Lanska's account of the detention, search, and arrest of [defendant] is false and that [defendant] was illegally detained, searched, and arrested. As such, it will be a defense in this case, both in a motion to suppress and at trial, that Lanska, and/or Urrutia fabricated the description of the detention, search and arrest of [defendant], wrote a false County Sheriff's report in this matter, and conducted an illegal detention, search, and arrest of [defendant]."

At the hearing, the court asked defense counsel if she had anything she wished to add to her motion. She said she did not. The court stated, "I am concerned that there is no plausible alternative scenario. I read the police report carefully, your motion carefully. It's simply a—he offers no plausible alternative scenario on how he got—how it all happened." Defense counsel responded, "Well, the allegation is the issues that were false was that he—the police are stating that he said this is where he lives with his wife and that is not his residence, it's not the residence that he is assigned to under parole. He has another residence with family members." The court noted that was not in counsel's declaration and the court needed "some competent evidence. So far it's just that I never said it, I never said it. I have no alternative scenario." Accordingly, the court denied the motion.

Defendant contends that the trial court abused its discretion by denying the motion. He argues the declaration supporting the motion provided a plausible factual scenario.

To obtain *Pitchess* discovery of a police officer's personnel records and complaints against such officers, a defendant or petitioner must file a motion describing the type of records sought and showing, inter alia, the materiality of the information to the subject of the pending action and good cause for disclosure. (Evid. Code, §§ 1043, 1045.) "To show good cause as required by section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citation] that would support those proposed defenses." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024 (*Warrick*).) "Counsel's affidavit must also describe a factual scenario supporting the claimed officer misconduct." (*Ibid*.) "The court then determines whether defendant's averments, '[v]iewed in conjunction with the police reports' and any other documents, suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial. [Citation.] Although a *Pitchess* motion is obviously strengthened by a witness account

9

corroborating the occurrence of officer misconduct, such corroboration is not required. What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Id.* at p. 1025.) "[A] plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.)

Counsel's declaration in support of defendant's *Pitchess* motion did not provide a plausible factual scenario. It merely asserted in a conclusory, nonspecific fashion that the deputies' report was false. It did not identify which portions were false or describe defendant's version of what happened in his encounter with the deputies. It did not, for example, state that defendant did not live at the house, was not on parole, did not consent to a search, did not possess any drugs, or did not make the admissions attributed to him in the report. As the court stated in *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1147, "Defendant did not specify which particular statement or statements in the police report or in the officers' testimony contained material misrepresentations, nor did he explain in what respect the statements were incorrect." Although *Warrick* stated that a sufficient plausible factual scenario, "depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report" (*Warrick*, *supra*, 35 Cal.4th at pp. 1024–1025), it cited as an example *People v. Hustead* (1999) 74 Cal.App.4th 410, in which counsel's declaration not only asserted that the police officer "made material misstatements with respect to his observations, including fabricating appellant's alleged dangerous driving maneuvers," but "also stated that appellant asserted that he did not drive in the manner described by the report and that his driving route was different from that found in the report." (*Hustead*, at pp. 416–417.) The declaration in *Hustead* thus specified at least one area of asserted falsity in the police report and set forth the defendant's factual scenario. The declaration in this case provided

10

no such specificity.  Accordingly, the trial court did not abuse its discretion by denying the motion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


JOHNSON, J.